**Edward D. BEAN, Plaintiff,**

v.

**David W. DARR, Individually and as Chairman of the Forsyth County Board of Commissioners, et al., Defendants.**

**No. C–173–WS–72.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Feb. 22, 1973.

Renn Drum, Jr., Winston-Salem, N. C., for plaintiff.

P. Eugene Price, Jr., County Atty., Forsyth County, Winston-Salem, N. C., James L. Blackburn, Asst. Atty. Gen., State of North Carolina, Raleigh, N. C., for defendants.

## MEMORANDUM ORDER

WARD, District Judge..

Plaintiff, a former Sanitarian II with the Forsyth County Health Department, seeks relief from and damages for his allegedly improper dismissal on November 8, 1971. The case is before the Court on the motion by defendant James Dixon for summary judgment, and the motion to dismiss and motion for summary judgment by defendants David W. Darr, Dr. James A. Finger, Martin W. Ericson, and Gilbert T. Davis.

Plaintiff predicates jurisdiction of the action upon Title 42 U.S.C. §§ 1983, 1984, 1985, 1986, 1987 and 1988; Title 18 U.S.C. § 1343; Title 28 U.S.C. §§ 1331 and 1343; and the Fourteenth Amendment to the United States Constitution.

Plaintiff, Edward D. Bean (Bean), was employed by the Forsyth County Health Department in January 1966. The affidavit of Martin W. Ericson, Chief of the Bureau of Environmental Health of the Forsyth County Health Department for the past thirteen years, revealed that on May 13, 1968, Bean was counseled as to his unacceptable conduct in his position and advised that if his misconduct continued, he would be given two weeks notice to voluntarily find other employment. On June 18, 1969, Bean

was suspended by Ericson for a three-day period for insubordination in Ericson's office on June 16, 1969. Bean was again counseled on March 22, 1971, by Ericson as to his unacceptable conduct. Bean was warned at that time of the possibility of firm administrative action being taken. On October 27, 1971, Bean became excessively abusive toward his supervisor, Ericson, according to the affidavit of Ericson. On November 8, 1971, Ericson notified Bean that his services as a Sanitarian II with the Bureau of Environmental Health were terminated by means of a letter containing the following sentence:

> For several years and on many occasions you have disrupted office procedure, shown gross disrespect and insubordination to your supervisors and have upset many of your fellow employees.

On February 17, 1972, the Board of County Commissioners of Forsyth County conducted a hearing with regard to the dismissal of Bean as an employee of the Forsyth County Health Department. Present at that hearing were Bean and his attorney, the Personnel Director, the Forsyth County Health Director, the Chief of the Bureau of Environmental Health for Forsyth County, and the Forsyth County Manager. The entire Board of Commissioners was also present at the hearing, and at the conclusion thereof, unanimously confirmed the dismissal of Mr. Bean as a Forsyth County employee, the Chairman of the County Board of Commissioners abstaining from voting.

The plaintiff appealed this ruling before the Forsyth County Board of Commissioners to the North Carolina State Personnel Board, which conducted another hearing concerning the dismissal of Mr. Bean on March 21, 1972. At the conclusion of that hearing the Personnel Board voted to affirm the decision of the Forsyth County Board of Commissioners, confirming the dismissal of Bean as a Forsyth County employee.

In his complaint the plaintiff prays that the Court: (1) Reinstate him with all rights and privileges; (2) award him retroactive compensation to the date of dismissal; and (3) award him $100,000 damages for injury to his reputation, professional standing, and permanent impairment or destruction of his earning capacity in his chosen vocation. Plaintiff has demanded a jury trial, and prays for the award of counsel fees.

Chapter 126 of the North Carolina General Statutes establishes for the government of the State a system of personnel administration under the Governor. In Chapter 126 of the North Carolina General Statutes, under Article 1, Sec. 126–1, a state personnel system is established and charged with the responsibility for personnel administration of state and local employees. Under Article 3 of Chapter 126, in Section 126–11, an exemption is made to Article 1 by the following language:

> § 126–11. Local personnel system may be established.—The board of county commissioners of any county which shall establish and maintain a personnel system for all employees of the county subject to its jurisdiction, which system is found from time to time by the State Personnel Board to be substantially equivalent to the system established under article 1 of this chapter for employees of local welfare departments, public health departments, and mental health clinics, may include employees of these local agencies within the terms of such system. Employees covered by that system shall be exempt from the provisions of article 1 of this chapter. (1965, c. 640, s. 2.)

The Forsyth County Commissioners adopted a "Personnel Policy" which became effective on July 1, 1962. This personnel resolution has since been supplemented and amended from time to time by the Board of County Commissioners, and is in effect at this time. The Court finds as a fact that the County Commissioners of Forsyth County

have established and maintained a personnel system for all employees of the county subject to its jurisdiction, and that Forsyth County employees covered by that personnel system are exempt from the provisions of Article 1 of Chapter 126 of the North Carolina General Statutes.

Having found that Forsyth County has an acceptable personnel plan, there is no question of the authority of Forsyth County to terminate the employment of Edward D. Bean, unless it did so in deprival of due process of law. The inquiry touching due process must be broken into three areas: (1) whether the county acted arbitrarily or capriciously, (2) whether the county acted for constitutionally impermissible reasons, such as the exercise of rights protected by the Constitution, and (3) whether the county acted without affording Edward D. Bean a proper hearing.

■ It is apparent to this Court that, in light of the evidence presented for the consideration of the County Commissioners of Forsyth County, the decision to terminate the employment of the plaintiff was supported by substantial evidence introduced at the hearing held on February 17, 1972.

On Page 14 of the Forsyth County Personnel Resolution, under Article III, Section 7, is found the criteria for demotion or dismissal as follows:

The County Manager may remove such officers, agents and employees as he may appoint, and upon removal shall report the same to the next meeting of the Board of County Commissioners. A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If the permanent employee continues to be negligent or fails to do work up to the standard of the classification held, the department head shall recommend to the County Manager that the employee be demoted or dismissed.

Any employee whose work is not satisfactory or who is guilty of gross negligence, disloyalty to the County, or defects of character that bring discredit upon the County may be suspended, demoted or dismissed by the County Manager.

The record is replete with instances in which Bean was notified in what ways his work was deficient and what he must do if his work was to be satisfactory. This Court fails to discern arbitrary or capricious action in the recommendation by Martin W. Ericson and Gilbert T. Davis, supervisors of Edward D. Bean, that Bean's employment with Forsyth County be terminated, nor does this Court discern arbitrary or capricious action in the termination of Bean's employment by James A. Finger in acting upon the recommendation of Bean's supervisors. Nor can the actions of the Forsyth County Board of Commissioners or David W. Darr be construed as arbitrary or capricious in light of the personnel record of Edward D. Bean, and the evidence adduced at the hearing held on February 17, 1972.

The Court turns now to a consideration of whether the termination of Bean's employment sprang from constitutionally impermissible reasons. In Paragraph 21, subparagraph (b), of his complaint, the plaintiff alleges that he was denied his constitutionally protected right of freedom of speech as follows:

(b) Plaintiff was denied employment as a Sanitarian not for the reasons asserted, but because of the exercise of his right of freedom of comment about conditions at his place of employment;

■ The First Amendment guarantees freedom of expression to ideas other than those of momentous magnitude or universal importance. Normally, discussions of methods to improve efficiency in the administration of a department of municipal government, such as the Bureau of Environmental Health of the

Forsyth County Health Department, are as constitutionally protected as the wearing of black armbands to protest the involvement of this country in Vietnam. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Also,

> [t]he guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government. Time v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456, 467 (1967).

The fact that a Sanitarian II isn't expressing ideas of nationwide significance doesn't remove his utterances from the ambit of protected speech.

> No suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression. Bridges v. California, 314 U.S. 252, 269, 62 S.Ct. 190, 196, 86 L.Ed. 192, 206 (1941).

However, it might not be trite to say that freedom of expression is a multifaceted concept. Importance of ideas is but one side of the panoply, including place of utterance, and the vividness of the method of expression chosen by the expresser of ideas.

The expression of ideas of public concern is not constitutionally unprotected simply because those ideas are directed toward or are critical of one's nominal superiors. Pickering v. Board of Education, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811, 820 (1968).

That case, in holding that a public school teacher was improperly dismissed because his critical comments of the board of education are protected to him as a member of the community more likely to be informed than others, did acknowledge the balancing of interests concept of freedom of expression.

At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Pickering, supra, 391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817.

Freedom of speech is a constitutionally guaranteed privilege but relative in its application. Consequently, measuring the appropriateness of a method of expression is as valid as measuring the degree of force needed to repel an assault without constituting a separate offense. Shouts, harsh voices, flaring tempers, and harangue are more readily acceptable in the anvil hammering arenas of public meeting places than the halls of a school or the offices of a Health Department. To allow the wearing of black armbands at night or freedom of oral speech at a school for the deaf would be as restrictive as allowing armed confrontations in school auditoriums would be permissive.

The expression of ideas in *Pickering* took place in a letter, not in a takeover of the principal's office or the haranguing of fellow employees.

> The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. *Pickering, supra,* 391 U.S. at 569, 88 S.Ct. at 1735, 20 L.Ed.2d at 818.

Not so in the instant case. The Court discerns not an orderly attempt to improve the efficiency or expose the corruptness of a municipal office as plaintiff alleges, but rather deliberate, re-

peated instances of insubordinate speech, disruptive conduct, contemptuous behavior, and complete disregard for office harmony and discipline and the rights and feelings of coworkers. In short, the Offices of the Bureau of Environmental Health of Forsyth County are not oceanside docks where brawling and abusive language are protected modes of expression, but are business offices with a business mission. The rational, orderly expression of ideas through discussion is far more appropriate than shouts of derision.

■■ Vociferous expression of unpopular ideas may not be constitutionally protected speech when the goal or result is simply the disruption of harmony or insubordination to one's superiors. Chitwood v. Feaster, 468 F.2d 359, 361 (4th Cir. 1972), expressed this idea as follows:

A college has a right to expect a teacher to follow instructions and to work cooperatively and harmoniously with the head of the department. If one cannot or does not, if one undertakes to seize the authority and prerogatives of the department head, he does not immunize himself against loss of his position simply because his noncooperation and aggressive conduct are verbalized.

The Court finds as a matter of law that the expression of ideas by the plaintiff so far evidenced is not constitutionally protected.

■■ Before considering the sufficiency of the hearing afforded plaintiff by the Forsyth County Board of Commissioners, we will consider several tangential allegations. Plaintiff alleges he was denied an opportunity for administrative assistance and supervision contrary to the announced policy of the defendants. This is patently illusory as proved by the affidavit of plaintiff's supervisors regarding their continued counseling. Plaintiff received more than adequate administrative assistance in that his supervisors constantly warned him of the particular way in which his work was unsatisfactory, and in what ways he could improve it. A complaint must contain more than mere conclusory statements unsupported by factual allegations. Lusk v. Eastern Products Corporation, 427 F.2d 705 (4th Cir. 1970), Friedman v. Younger, 46 F.R.D. 444 (C.D.Cal.1969).

Regarding the sufficiency of the hearings afforded him, the plaintiff has alleged:

1. The letter of discharge was insufficiently precise to inform him of the charges against him and enable him to prepare his defense, nor was any evaluation of his on-the-job performance offered.

2. The burden of proof was on the plaintiff at the hearings.

3. Plaintiff was denied proper access to information and denied his right of confronting his accusers.

4. Defendants prevented plaintiff from presenting his witnesses, or from interviewing them prior to the hearing.

5. Defendants considered secret evidence.

6. Defendants' attorney went into secret session with the Board of Commissioners during their decision making.

7. Hearsay evidence was presented, no findings of fact were made, and the evidence was not factual and specific.

■ Germane to, and appropriate for study prior to any discussion of the sufficiency of plaintiff's hearings, is the question of whether or not he was entitled to a hearing before the termination of his employment, or at all. The Supreme Court has negated the necessity of a hearing prior to the nonrenewal of the contract of a nontenured teacher, absent the showing of a deprivation of an interest in liberty or a property interest in continuation of the employment status. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). While a mere subjective expectancy of continued employment is not protected by procedural due process, a plaintiff shall not be foreclosed from

proving his entitlement to tenure based on rules and understandings officially promulgated and fostered. Thus a "non-tenured" teacher was allowed the opportunity to prove he had a form of tenure. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

These cases deal with the rights of nontenured teachers, a class excluding Mr. Bean in his classification of Sanitarian II. There is no mention of tenure in the Forsyth County Personnel Policy. However, on page 12 we find the following:

> Section 4. *Probationary Period.* All appointments to permanent positions in the service of the County shall be for a probationary period of twelve months. At the end of the period of probation, the department head will recommend to the County Manager whether the employee will be retained or dismissed. If retained, the employee shall be considered a permanent employee.

On page 13, the Personnel Policy delimits the privileges of "permanent" employment as follows:

> Section 7. *Demotion or Dismissal.* The county manager may remove such officers, agents, and employees as he may appoint, and upon removal shall report the same to the next meeting of the Board of County Commissioners.

The remainder of the paragraph negates any possible conclusion other than that "permanent" employees serve at the will and pleasure of the county manager.[1]

Thus, as in *Hodgin,* the appellant in the instant case was employed at the will and pleasure of the city and thus was subject to dismissal so long as it was not in retribution for an exercise of some constitutionally protected right. Brown v. Hirst, 443 F.2d 899, 900 (4th Cir. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 720, 30 L.Ed. 2d 732 (1972).

The *Hodgin* case referred to provides additional insight, as follows:

> As city librarian, Mr. Hodgin held his position at the will and pleasure of the city. There was no contractural (sic) or other arrangement limiting the right of termination. Accordingly, he was subject to summary discharge with or without cause, so long as it was not in retribution for an exercise by him of some constitutionally protected right. Hodgin v. Noland, 435 F.2d 859, 860–61 (4th Cir. 1970), cert. denied, 408 U.S. 942, 92 S.Ct. 284, 33 L.Ed.2d 766 (1972).

Likewise, here there is no contractual or administrative limitation on the right of termination other than that specified in Section 7 of the Personnel Policy. The affidavit of Melvin Henderson, Director of Personnel for Forsyth County, submitted in support of the Motion for Summary Judgment, expands the personnel policy by adding a paragraph written in direct address. Because it was so submitted, this Court will consider it as an adjunct to the Personnel Policy. It ends as follows:

> After making a thorough investigation of the matter, the Director of Personnel will attempt· to resolve it. However, you may appeal his decision directly to the County Manager. If for any reason the County Manager is unable to resolve the problem, a final appeal may be taken to the Board of County Commissioners.

This is not taken to be a precise grant of a hearing by the Board of County Commissioners on any unresolved problem, such as termination. Thus the local system does not provide for a hearing.

■ As to any general inherent right to a hearing,

> [t]he requirements of procedural due process apply only to the deprivation of interests encompassed within the Fourteenth Amendment's protec-

---

1. The status of the plaintiff in this case is readily distinguishable from that of the plaintiff in Thomas v. Ward, C–216– WS–71, decided by this Court February 13, 1973. There is no tenure system in the Forsyth County Health Department.

tion of liberty and property. When protected interests are implicated the right to some kind of prior hearing is paramount. Board of Regents v. Roth, *supra,* 408 U.S. at 569, 92 S.Ct. at 2705, 33 L.Ed.2d at 556–557.

See also Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113, 119 (1971), and for the proposition that when the State seeks to terminate a protected interest, the notice and opportunity for hearing must occur before the termination becomes effective, see Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90, 96 (1971).

■ Plaintiff's interest in the continuation of his employment in this case is not of such a protected nature. Brown v. Hirst, *supra,* and Hodgin v. Noland, *supra.* Thus there was no inherent right to a procedural due process hearing.

Board of Regents v. Roth, *supra,* which negated the necessity for a hearing prior to the nonrenewal of a nontenured state teacher's contract in the absence of a showing of a deprivation of an interest in "liberty" or a "property" interest in continued employment, is inapplicable. The plaintiff has not alleged the deprivation of liberty or a property interest other than alleging that his right to continued public employment has been curtailed. The affidavit of Dr. J. S. Taylor, Health Director, Stokes County, North Carolina, Health Department, offered in support of the Motion for Summary Judgment, states that plaintiff was employed as of July 27, 1972, as a Sanitarian II with the Stokes County Health Department. Plaintiff's unsupported claim that he shouldn't have to move to another jurisdiction to pursue his chosen vocation is not justiciable in light of the evidence of his fully warranted discharge. There has been no deprivation of liberty or property interest here; no *Roth* type hearing is mandated by the circumstances.

Plaintiff cites Battle v. Mulholland, 439 F.2d 321, 323 (5th Cir. 1971), for its statement citing Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970), as follows:

It is now settled law that if the state, either by statute, regulation or procedure, creates in its employees the expectation of re-employment or retention, then their employment can only be terminated under procedures which accord them the fundamentals of due process.

Rather than mandating a due process pre-termination hearing for municipal employees otherwise unprotected, that case held that the courts were a proper avenue for a challenge to a termination for constitutionally impermissible reasons, such as the exercise of constitutionally protected rights.

■ One of plaintiff's primary contentions is that whether they were required to do so or not, both the local Board of County Commissioners and the State Personnel Board granted plaintiff hearings, and that these hearings were improper in that the defendants positively interfered with the production of witnesses by the plaintiff. There has been no affidavit denying or refuting this charge by the plaintiff, so it may be taken as true. Plaintiff therefore alleges that even if there is no right to a hearing, if one is granted, it must comport with all the trappings of due process.

Slightly simplistic, this argument is not unsupported, as this general proposition can be inferred from a careful reading of the Fourth Circuit Court of Appeals' opinion in Horton v. Orange County Board of Education, 464 F.2d 536 (4th Cir. 1972), expressly incorporating and affirming by reference the district court opinion by the late Honorable Edwin M. Stanley, Horton v. Orange County Board of Education, 342 F.Supp. 1244 (M.D.N.C.1971). This argument is not novel, having been advanced by the plaintiff, Verriah V. Kota, in Kota v. Little, 473 F.2d 1 (4th Cir., January 16, 1973). Plaintiff's argument

was rejected with the following reasoning:

> We do not think that the courtesy extended to Dr. Kota by the members of the Board in permitting him to appear before them to state his objections to the administrative action could in any sense be characterized as a hearing within the meaning of the *Horton* opinion.

This incisive view delineates between a pretermination hearing, properly or belatedly given, and an appeal to an administratively functioning board as part of a quasi-grievance procedure. Any argument that Judge Field eschewed labeling plaintiff's appearance before a board as a hearing because of a lack of courtroom trappings is unpersuasive to us. The "hearing" in that case was kept from hearing status not by a paucity of pomp, but rather by the very nature of the proceedings. Likewise, in the instant case and irrespective of the elaborate and highly commendable manner in which the Forsyth County Board of Commissioners heard the appeal of plaintiff, it was not necessary that it rise to the status of a due process hearing for the protection of Fourteenth Amendment rights.

The affidavit of David W. Darr, former Chairman of the Forsyth County Board of Commissioners, establishes that timely notice was provided to plaintiff, that Mr. Bean was present and represented by counsel, that a court reporter was present during the "hearing," that witnesses were duly sworn as provided by law, that plaintiff was afforded ample cross-examination of the witnesses testifying in support of the administrative action of discharge, that Mr. Bean was sworn and allowed to testify concerning his contentions and grievances, and that no other persons were present during the deliberation, nor was evidence taken other than that offered in full hearing of everyone.

Even if plaintiff was hindered from presenting his witnesses at his appeal hearing, there is not affirmative evidence that he objected or asked for a continuance at that time, Grimes v. Nottoway County School Board, 462 F.2d 650 (4th Cir. 1972), nor is there any showing by affidavit or otherwise as to who the hindered witnesses were or to what they would have testified. *Grimes* suggests that the totality of the situation must be judged as to the sufficiency of a hearing, where one is entitled to a hearing. See Ferguson v. Thomas, *supra*, at 856 of 430 F.2d.

There is no question that even though plaintiff was not entitled to a hearing, had he been so entitled, the procedure employed by the Forsyth County Board of Commissioners, while it may have uncommendably hindered the presentation by plaintiff of his evidence, would have been sufficient in light of the totality of the circumstances. Having decided that the Forsyth County Personnel Policy removes the affected employees from the applicable provisions of the State Personnel System, we find that any hearing by the State Personnel Board, for whatever reason motivated, was unnecessary, and because only an advisory opinion could be issued, it was but at best a placation attempt in the grievance procedure, not the ultimate due process pretermination hearing. To penalize either the State Personnel System for granting an audience to plaintiff Bean, or Forsyth County for so adequately protecting the appeal rights of plaintiff would be rank injustice.

This Court has failed to discern any violation of the criminal laws of the United States, Title 18 U.S.C. § 1343, by any of the defendants, as alleged by the plaintiff.

This Court has not found it necessary to consider the issue of sovereign immunity raised by the defendant James Dixon, as chairman of the North Carolina Personnel Board.

For the foregoing reasons, the Court will grant the Motion for Summary Judgment by defendants David W. Darr,

Jr., Dr. James A. Finger, Martin W. Ericson, and Gilbert T. Davis, and also the similar motion by defendant James Dixon.