**Edward D. BEAN, Plaintiff,**

v.

**Dr. J. S. TAYLOR, Individually and as Director of the Stokes County Health Department, et al., Defendants.**

**No. C–75–164–WS.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Feb. 10, 1976.

Edward D. Bean, pro se.

William F. Marshall, Jr., Danbury, N. C., for Dr. J. S. Taylor.

Isaac T. Avery, III, Associate Atty., N. C. Dept. of Justice, Raleigh, N. C., for Claude E. Caldwell and J. M. Crocker.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

Plaintiff, a former Sanitarian II with the Stokes County Health Department, seeks relief from and damages for his allegedly improper dismissal on November 12, 1973. This matter is before the Court on the motions to dismiss and motions for summary judgment[1] by all defendants, both in their individual and official capacities.

Plaintiff predicates jurisdiction of the action upon 42 U.S.C. §§ 1983, 1984, 1985, 1986, 1987, and 1988; 28 U.S.C. §§ 1331 and 1343; and the Fourteenth Amendment to the United States Constitution.

Considering the facts in the light most favorable to the plaintiff for the purposes of the motions, it appears that the plaintiff, Edward D. Bean (Bean), took the North Carolina Merit System examination for a Sanitarian II position in 1967 and passed. He was subsequently employed by Forsyth County as a Sanitarian II until he was dismissed for cause on November 8, 1971. That dismissal was held constitutionally proper by this Court in *Bean v. Darr,* 354 F.Supp. 1157 (M.D.N.C.1973). After his dismissal by Forsyth County, and before the decision in *Bean v. Darr, supra,* plaintiff was employed as a Sanitarian II by Stokes County, North Carolina, on July 1, 1972. Under the provisions of Article IV of the State Personnel Rules (Rules) Stokes County was required to fill its Sanitarian II vacancy from the five highest available persons listed on the applicable register. Plaintiff had not retaken the Sanitarian II exam prior to his employment by Stokes County and thus was not listed on the register, as he was required to be, for employment. Affidavit of defendant Crocker, Page 2.

On July 14, 1972, Bean received an authorization card from the state which identified him as an employee of the Stokes County Health Department. On August 11, 1972, defendant Crocker, Manpower Manager of the North Carolina Department of Human Resources, State Board of Health, wrote defendant Taylor, Director of the Stokes County Health Department, that Bean's salary was improperly computed between step

---

grades. In that communication, Bean was referred to as a "new appointment." Because of Bean's prior experience, it was recommended that he be paid the higher salary. Taylor accepted the recommendation. According to the affidavit of Taylor, defendant Crocker informed Taylor approximately two weeks after the hiring of Bean that since Bean was only recently an employee of Forsyth County, he could be hired as a "reinstatement." Accordingly, on August 22, 1972, Form PD–100–H was submitted to the state requesting reinstatement and permanent position. Nothing further was forthcoming from the state agencies and, approximately three months after Bean was hired, Taylor's secretary, Hilda Matthews, requested information as to why approved forms had not been returned to the county.

On November 6, 1972, Crocker wrote Taylor explaining that he had been informed by defendant Caldwell's state personnel agency that Bean did not possess the qualifications for reinstatement. Crocker explained that since Bean had been dismissed "not in good standing," (See Bean v. Darr, supra ), he could not be reinstated, but must retake the qualifying exam, be placed on the proper register, and be selected from it. At this point, the affidavits of Bean and Taylor conflict. Taylor states that he told Bean in November 1972 that he would have to retake the exam and arranged for him to take it on the first Saturday in December 1972. Bean alleges that in November 1972 Taylor assured him that he would not be required to retake the exam. Taylor admits in his affidavit that early in Bean's employment, he told Bean he would not be required to take the exam again after talking to District.

Sanitarian D. Y. McBrayer. For the purpose of deciding the motions before the Court, the Court accepts the facts in the light most favorable to the plaintiff.

Bean continued to work for Stokes County and in July 1973 received another authorization card. Then on October 5, 1973, Crocker wrote Taylor that Bean could not remain on the job without retaking the Sanitarian II test and qualifying as a new appointee. Crocker stated that the presence of unauthorized personnel could jeopardize state and federal funding.[2]

Bean contends that he was first informed that he would be required to retake the exam on October 26, 1973, and that Taylor requested him to take it on either October 27, 1973, or November 3, 1973. Bean admits that he refused to take the exam, believing that the state would refuse to hire him even if he passed. Plaintiff's affidavit, Pages 3, 4. On October 29, 1973, Bean requested a hearing on the matter in a letter to Taylor. Bean was then dismissed on November 12, 1973. Crocker responded to the request for a hearing on November 26, 1973, stating that no hearing was proper under state law because Bean was not properly employed and, therefore, not covered by the state rules. Bean then instituted this action.

■ Liberally construing Bean's pro se complaint, he has alleged the following grounds for recovery:[3]

(1) He was discharged for "no or improper cause."

(2) The defendants violated state personnel law.

(3) The defendants acted in concert and in bad faith to mislead him as to the law of North Carolina.

---

2. Crocker states in his affidavit that this conclusion comes from the fact that both federal and state law require Sanitarian II appointments be made under the Merit System. Bean does not contradict this statement, though he terms the conclusion stated in the October 5, 1973, letter of Crocker a "threat."

3. Obviously Bean is relying upon at least some state law causes of action (i. e., that defend-

ants violated state personnel law). Those claims will be before this Court under the doctrine of pendent jurisdiction, if at all. In view of the Court's finding that Bean has failed to show any violation of federal rights, and in light of the sensitive nature of state personnel relations, the Court, in its discretion, will not consider any state law claims.

(4) The defendants acted to deprive him of property without due process of law or equal protection because:

(a) Defendants refused to treat him equally with all other Sanitarian II employees.

(b) Defendants acted "arbitrarily and capriciously."

(c) Plaintiff was denied the right to a hearing.

Bean has, broadly speaking, alleged that the actions of the defendants have deprived him of due process and equal protection in three ways:

■ (1) The defendants failed to treat him "equally" with all other Sanitarian II employees in the state system. Bean, however, has failed to cite any facts supporting this allegation other than the fact he was dismissed from his job. As will be shown later in this decision, Bean never was a *properly* employed Sanitarian II while working for Stokes County. He can hardly make out an equal protection case on the basis of the fact that he was not treated like all other Sanitarian II employees when he himself was not one.[4]

(2) Defendants have denied him the constitutional right to be free from "arbitrary and capricious" state actions. However, it is clear that, even when looking at the evidence in the light most favorable to the plaintiff, the defendants had substantial justification for acting as they did and that their actions cannot be classified as "arbitrary or capricious."

■ (3) The defendants' failure to give Bean a hearing deprived him of "property" without due process of law. This is the most viable theory upon which Bean could proceed. Looking at the facts in the light most favorable to him, it appears that plaintiff demanded a hearing concerning his qualifications, but the state summarily denied the request. However, before a due process cause of action arises, one must be deprived of a "property interest" and a reading of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in conjunction with North Carolina law,[5] shows conclusively that Bean had no such property interest.

■ *Goldberg* held that a person who had an "entitlement" to some benefit extended by the state could not be deprived of that "entitlement" without at least *some* due process rights. The "entitlement" must be construed as a sufficient property interest *per se* to trigger the application of the due process clause. It is not necessary that the plaintiff be legally entitled to the disputed item or right itself.[6] It is only necessary that the plaintiff establish the "entitlement," which is a constitutional property interest in and of itself.

■ In the context of state employment cases, *Board of Regents v. Roth, supra,* and *Perry v. Sindermann, supra,*

---

**4.** Bean's entire equal protection claim is based on the contention that he was not treated like all other Sanitarian II employees. He neither alleged nor cited evidence to the effect that he was denied status as a Sanitarian II because he was a victim of a "suspect" or irrational classification. Indeed, the reasonableness of a state's differentiation between the classes of properly and improperly employed persons would be reasonable beyond dispute.

**5.** The Court carefully considered the possibility of abstaining from a decision in this case. *See* Burger, C. J., concurring, *Perry v. Sindermann,* 408 U.S. at 603–604, 92 S.Ct. at 2717, 33 L.Ed.2d at 581. However, in light of the

fact that the law of North Carolina on the questions involved in this case is quite clear, and because the plaintiff may have foreclosed his access to state courts by virtue of his failure to follow the provisions of N.C.G.S. § 143–307 *et seq.* (1974), the Court will rule on the pending motions.

**6.** "The recipients [in *Goldberg*] had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561, *supra.*

define the due process-triggering entitlement as "a legitimate claim of entitlement to job tenure."[7] If this legitimate claim exists, the employee is clothed with certain due process rights, including the right to at least some form of hearing concerning his dismissal. Without some legitimate claim to job tenure, however, the employee can be summarily dismissed without hearing or cause so long as the dismissal is not for a constitutionally impermissible reason—*i. e.,* race. *See Hodgin v. Noland,* 435 F.2d 859 (4th Cir. 1970), *cert. denied,* 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972); *Brown v. Hirst,* 443 F.2d 899 (4th Cir. 1971), *cert. denied,* 404 U.S. 1040, 92 S.Ct. 720, 30 L.Ed.2d 732 (1972). Thus, under *Roth* and *Sindermann,* Bean will have to show one of the following elements in order to make out a due process claim:

(1) That he had actual formal tenure under the state personnel laws and administratively promulgated rules, or

(2) That he had a claim of "tenure" *binding on the state* under state law because the promisor's words or conduct, in the light of all the circumstances, created an implied contract. The mere fact these words and conduct may have induced Bean to *believe* subjectively that he had tenure is not enough.[8] He is required to show that the state's action bound the state under its own law to give him tenure. *Perry v. Sindermann, supra,* and *Board of Regents v. Roth, supra.*

This Court holds that, looking at the facts and law in the light most favorable to him, plaintiff has failed to show a legitimate claim to job tenure and, therefore, failed to show a deprivation of due process.

### I. *Plaintiff has failed to show that he had formal tenure.*

As a general rule, a public employee is an employee "at will" who can be summarily dismissed so long as it is not for a constitutionally impermissible reason. *Hodgin v. Noland, supra; cf. Board of Regents v. Roth, supra.* Only when the state grants the employee tenure does he have an interest in continued employment that rises to the level of a protected entitlement. North Carolina law grants such tenure in Article IX, § 6, ¶ 1, Rules.[9] This tenure, however, applies only to permanent employees. Thus, Bean must show himself to be a permanent employee to be entitled to tenure.

Bean was appointed to the Stokes County position on July 1, 1972. At that time, the State Rules allowed him to become a permanent employee either as a reinstated former employee or as an "original appointment." Bean does not qualify for reinstatement. Article IX, § 7, ¶ 1 of the Rules confines reinstatement to former employees "in good standing." It is undisputed that Bean had been dismissed *not* in good standing. *See Bean v. Darr,* 354 F.Supp. 1157 (M.D.N.C.1973).

Likewise, Bean never became a permanent employee as an original appointment under Article VI, § 1, Rules, because he was not selected from the "five highest available names on the register." *See also* Article IV, Rules; Affidavit of

---

7. *Perry v. Sindermann,* 408 U.S. at 602, 92 S.Ct. at 2700, 33 L.Ed.2d at 580.

8. For instance, in his affidavit, Bean states: "20. That I was led to believe in expectancy of continued employment as a Sanitarian II in Stokes County because of my having received these two authorization cards from the State and because of my continued employment for almost an additional year after the completion of my probationary period of six months."

 A claim that he was induced to believe he had tenure may create some state law cause of

action but certainly does not *ipso facto* create a legitimate claim of tenure.

9. SECTION 6. *Tenure of Office*
 Paragraph 1. The tenure of office of every *permanent employee* shall be during good behavior and the satisfactory performance of his duties as recorded by his service rating. This provision, however, shall not be interpreted to prevent the separation of an employee for cause, or the separation of an employee because of lack of funds or curtailment of work, when made in accordance with these standards. (Emphasis added).

Crocker, Page 2. Thus, Bean was not properly employed under state law. In addition, in order for even a proper original appointee to become a permanent employee entitled to tenure under Article IX, § 6, certain conditions precedent contained in Article VII, § 2, must be fulfilled.[10] Bean has neither alleged nor shown any facts indicating that these conditions precedent have been performed. *See* Rule 9(c), Federal Rules of Civil Procedure. Thus Bean was not entitled to tenure under the formal state rules.

II. *Plaintiff has failed to show any implied contractual term or other understanding binding on the state under state law, giving him a legitimate claim to job tenure.*

*Sindermann* recognized that a protectable entitlement might exist outside the formal terms of a state employee's contract. But that case also clearly held that the informal term or understanding must be "no less binding" on the state than a formal contract. *Perry v. Sindermann,* 408 U.S. at 599, 92 S.Ct. at 2699, 33 L.Ed.2d at 579. Indeed, footnote seven to the opinion states that "[i]f it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated." 408 U.S. at 603, 92 S.Ct. at 2700, 33 L.Ed.2d at 580. Therefore, this Court must decide if Bean, with all the facts considered in the light most favorable to

him, has shown a right of job tenure *binding* on the state. This Court holds there is no such binding obligation on the part of the state.

■ It is the firm and long-established policy of the courts of North Carolina not to enforce a contract provision that is contrary to law or public policy. As stated in *Standard Fashion Co. v. Grant,* 165 N.C. 453, 81 S.E. 606, 607–08 (1914), *writ of error dismissed,* 239 U.S. 654, 36 S.Ct. 164, 60 L.Ed. 487 (1915):

It is well settled that the courts of a state will not lend their aid to the enforcement of a contract: (1) When the contract in question is contrary to good morals. (2) When the state of the forum, or its citizens, would be injured by its enforcement. (3) When the contract violates the positive legislation of the state of the forum. (4) When it violates its public policy.

The Court finds that North Carolina law clearly makes any "implied contract"[11] with the plaintiff unenforceable for the following reasons:

(1) The state and its citizens would be harmed by its enforcement. Not only would the continued employment of a person not hired in accordance with N.C. G.S. § 126–1 *et seq.,* tend to harm the state by undermining its merit system, but it is possible that the continued employment of Bean would jeopardize North Carolina's continued receipt of federal funds. Defendant Crocker, on

---

**10.** SECTION 2. Conditions Preliminary to Permanent Appointment

Paragraph 1. Permanent appointment of a probationary employee shall begin with the date ending the probationary period, provided that the Personnel Officer has received from the employee's supervisor a statement in writing that the services of the employee during the probationary period have been satisfactory and the employee is recommended to be continued in the service. The statement shall contain an appraisal of the value of the employee's services and shall include a service rating upon a form prescribed by the Personnel Director. It shall be the responsibility of the Personnel Officer to obtain such statement with recommendations 4 weeks prior to the ' end of the probationary period. The Personnel

Officer, on the basis of such statement and recommendations, shall make recommendations to the appointing authority, and if it is determined that the services of the employee have been unsatisfactory, the Personnel Officer shall notify the employee in writing at least 15 days in advance of the date his services are to be terminated. An employee whose appointment is to be made permanent shall also be notified. The Personnel Officer shall notify the Director of the action taken regarding the services of the employee.

**11.** The Court is in no way holding that the facts as alleged by Bean give rise to an "implied contract." The Court is merely, as it must, construing the facts and law as favorably as possible for the nonmoving party.

page two of his affidavit, states that both federal and state funding would be jeopardized because both require Sanitarian II employees to be selected by the merit system. Plaintiff does not contradict this allegation of fact.[12]

(2) Any implied agreement with Bean would violate the positive legislation of the state embodied in N.C.G.S. § 126–1 *et seq.,* which establishes a state-wide personnel system. This legislation requires the State Personnel Board to establish rules governing "reasonable qualifications" for each position. N.C.G.S. § 126–4(3). To hire one not coming within the terms of the established rules would be to violate Chapter 126.

"It is not necessary that there should be an express prohibition in a statute to render void a contract made in violation of it. It makes no difference whether the prohibition or command is expressed or implied. Even where the statute does not, in express terms, declare the act unlawful, yet if it appears, from a consideration of the terms of the legislation in question, that the legislative intent was to declare the act unlawful, no contract involving the doing of such an act can be enforced. In other words, the inquiry is as to the legislative intent, and that may be found not only in the express terms of the statute, but also may be implied from the several provisions thereof. So a contract will not be enforced where it conflicts with the general policy and spirit of the statute which governs it, although there may be no literal conflict." 6 Ruling Case Law (title "Contracts") p. 701, § 107. *Mann v. Mann,* 176 N.C. 353, 97 S.E. 175, 179 (1918). It is certain that if the State Personnel Board or its officers [13] had the power to enter into an enforceable contract with one not qualified under the rules contemplated by N.C.G.S. § 126–4(3), Chapter 126 would be meaningless. The legislative intent to forbid all hiring except under Chapter 126 is clear. Since Bean did not meet the Chapter 126 qualifications, any contract of employment which he had with the state was forbidden and, therefore, unenforceable.

(3) Public policy would be violated. N.C.G.S. § 126–1 states that the purpose of the statute is " . . . to establish for the government of the State a system of personnel administration . . . based on accepted principles of personnel administration and applying the best methods as evolved in government and industry." As stated in *Cauble v. Trexler,* 227 N.C. 307, 42 S.E.2d 77, 80 (1947): "The purpose of the statute becomes a public policy." The purpose of Chapter 126 and thus public policy would be frustrated by enforcement of contracts made in violation of the valid rules established pursuant to N.C.G.S. § 126–4(3). This frustration of public policy would require nonenforcement of any such contract.

*Mann v. Mann, supra,* is particularly apposite to the case now before this Court. In *Mann,* the plaintiffs alleged that they had entered into an agreement with a statutorily created Drainage Commission to limit the amount of assessment possible on certain land. The plaintiffs claimed that a court judgment embodying the terms of the agreement had left out the assessment limitation. The court clearly held, *inter alia,* that such an agreement on the part of the official body would be violative of the statute creating the body and violative of public policy. 97 S.E. at 178–79. Thus, the agreement was void and unenforceable. *See also Gibbs v. Drainage*

---

12. But see footnote 3 of this memorandum order.

13. *See Glover v. Rowan Mut. Fire Ins. Co.,* 228 N.C. 195, 45 S.E.2d 45, 47 (1947):

When the right to do a thing depends upon legislative authority, and the legislature has failed to authorize it, or has forbidden it, *the approval of the doing of it by a ministerial officer* cannot create a right to do that which is unauthorized or forbidden. (Emphasis added).

*Commissioners,* 175 N.C. 5, 94 S.E. 695, 697 (1918).

 Therefore, even taking all of Bean's allegations as true and construing them in a light most favorable to him, he has failed to make out a due process claim. He was without tenure under the state statutes and no enforceable contract could have been made with the state giving him such tenure.[14] Indeed, Bean finds himself in the same position as the plaintiff in the *Roth* case. He was employed by the state as an "employee at will." Lacking a legitimate claim to job tenure, he could be dismissed, not only for cause, but for no cause at all. To be sure, however, the circumstances of plaintiff's employment, when observed in light of the applicable state personnel system, discloses sufficient cause for Bean's dismissal.

For the foregoing reasons, the Court will grant the motions for summary judgment by all defendants, both in their individual and official capacities.

It is, therefore, ordered that defendants' motions for summary judgment be, and the same hereby are, granted. A judgment will be entered accordingly.

---

**14.** It should be noted that, liberally construed, Bean's *pro se* complaint also attempts to make out a deprivation of *liberty* claim. To wit, Bean alleges that the actions of the defendants injured his reputation. *See Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558. However, the mere fact that one is discharged from a government job because he did not meet the administrative qualifications reflects not upon *him,* but upon those who hired him in ignorance of the requirements. The mere showing that an employee without tenure was discharged is not sufficient to show a loss of liberty. *cf. Perry v. Sindermann,* 408 U.S. at 599, 92 S.Ct. at 2698, 33 L.Ed.2d at 578–79.