**William E. WILLINGHAM, Jr., Plaintiff,**

v.

**O. W. CARTER, Superintendent of the Jefferson County Board of Education, James Abbot, Nathaniel Boatright, Jasper Davis, John Kilgore, Paul Ledger, James Rogers, and Russell Scarboro, Individually and as Members of the Jefferson County Board of Education, and the Jefferson County Board of Education, Defendants.**

No. CV677–13.

United States District Court,
S. D. Georgia,
Swainsboro Division.

March 7, 1978.

Theodore G. Frankel, Haas, Holland, Levison & Gibert, Atlanta, Ga., for plaintiff.

Milton A. Carlton, Spivey & Carlton, Swainsboro, Ga., for defendants.

OPINION

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

LAWRENCE, District Judge.

I

On December 21st last this Court granted partial summary judgment to defendants.

---

**15.** See S.Rep.No. 518, 91st Cong., 2d Sess., 3 (1970).

As to lack of procedural due process I ruled that since under the statutory law of this State governing renewal of teachers' contracts plaintiff possessed no tenure, he was not constitutionally entitled to a hearing. See Ga. Code Ann. § 32–2103c.

The defendants' motion for summary judgment was denied as to Mr. Willingham's claim that the failure to renew his contract as instructor of naval science in the ROTC unit at Wrens High School was, in whole or part, due to his criticism of the operation of the Training Center for retarded children at Louisville, Georgia. However, I found that a question of fact exists as to plaintiff's claim that his nonrenewal was the result of his exercise of First Amendment rights.

In the Order of December 21, 1977, the case of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 was cited. There the Supreme Court said:

"That conduct protected by the First and Fourteenth Amendments played a substantial part in the decision not to rehire respondent does not necessarily amount to a constitutional violation justifying remedial action. The proper test is one that protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights. Since respondent here satisfied the burden of showing that his conduct was constitutionally protected and was a motivating factor in the petitioner's decision not to rehire him, the District Court should have gone on to determine whether petitioner had shown by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct."

That decision was recently followed by the Fifth Circuit in *Love v. Sessions*, 568 F.2d 357 (1978). It involved a non-tenured school principal whose contract was not renewed by the Board on the ground of insubordination. The Court of Appeals said:

"The critical issue in this suit is not whether the Board's charges against Love are true, but whether the charges are truly the basis for the Board's decision not to renew Love's contract. If the real reason for Love's nonrenewal is his exercise of First Amendment rights, then the Board's decision is impermissible and the truth of its asserted basis does not serve as a complete defense to the constitutional wrong. *Fluker v. Alabama State Board of Education*, 5 Cir., 1971, 441 F.2d 201, 209.

"This is not to say that the truth or falsity of the Board's reasons is irrelevant to the First Amendment claim. If the charges are false, then the likelihood of their serving as a pretense for another, unconstitutional basis for nonrenewal is increased. On the other hand, if the Board's charges of insubordination and violation of rules are *both* true and a sufficient basis for the nonrenewal of Love's contract, such that the same decision would have been made in the absence of constitutionally protected expression, the Board would have established a complete defense. *Mt. Healthy City Board of Education v. Doyle*, 1977, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471."

The parties having waived a jury, the case was tried at Savannah on February 22nd. A total of fifteen witnesses testified.

Burden of proof is important in cases where a public employee contends that the substantial and motivating factor in the termination or nonrenewal of employment was his exercise of the right of free speech rather than the reasons claimed by the board or department. In *Mt. Healthy City School District Board of Education v. Doyle, supra,* the Supreme Court dealt with burden of proof. "Initially," it said,

"the burden was properly placed upon respondent [employee] to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to

determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576.

## II

William E. Willingham, the plaintiff, is a retired commander in the Navy. In 1973 he was hired by the Board of Education of Jefferson County on a year to year basis as naval science instructor in the newly established R.O.T.C. naval unit at Wrens. Plaintiff had served in the Navy for thirty years since his enlistment in 1943. Plaintiff received a B.A. degree from Emory University in 1948 and in 1954 got an M.S. in meteorology. While in the Navy, he had several tours of duty in teaching.

Commander Willingham has a retarded daughter who remained in Washington, D.C. at the National Children's Center until the year following his moving to Georgia. After the establishment of a day care treatment center in Jefferson County, she came to Wrens and was enrolled at the Center in April, 1974.

Mr. Willingham was neither enchanted by the operation of the Center at Louisville nor the physical facilities. They were located in a converted prison. He had been active in the movement to obtain a Training Center in the County and was President of the Jefferson County Retarded Children's Association.[1]

One of Mr. Willingham's principal complaints was the "time out room" where his daughter was occasionally confined. It was 6 feet by 7 feet and was like a "padded cell." His letters to Mental Health officials criticized the "time out room" as well as the operation of the Center. He drew an invidious comparison between the professional qualifications of the teachers at the Louisville facility and the centers that his daughter had attended in Washington and Norfolk. Plaintiff was dissatisfied with the quality of psychological services (Ex. 3) and

was displeased with the performance of the Director, Mrs. Kennedy.

In a letter Willingham wrote to the State Division of Mental Health on January, 1975 he stated: "My letter to Dr. Patton caused quite a stir here in Jefferson County. I understand that there was an emotional meeting between some of Mrs. Doris Kennedy's friends and the County Commissioners. I think that was an attempt to get me fired as a naval science instructor . . . since I am now branded as a trouble-maker." Plaintiff's Ex. 2.

At a meeting of the Jefferson County Board of Health on March 24, 1976 he criticized the operation of the Center as it related to his retarded child. However, this was *after* the Board of Education had failed to renew his contract and notified him of such action.

In a letter dated March 18, 1976 to the Commissioner, Georgia Department of Resources, Mr. Willingham stated: "Since my record here at school has been outstanding, I think the action of the school board is a result of my opposition to the policies of the training center at Louisville." Plaintiff's Ex. 1. At the trial he testified that the nonrenewal of his teaching contract had to be the result of his criticism of the Center since his operation of the naval unit was excellent. To similar effect, see his pre-trial deposition, p. 32.

The naval unit at Wrens High School was launched with a salvo of local enthusiasm. Its establishment enlisted the support of civic clubs and prominent members of the community. At the beginning (1972–73), there were 117 male cadets. That figure dropped to 80 in the following school year and was down to 72 in 1975–76. However, in 1973 girls were permitted to enroll and 50 to 60 enrolled in the program, bringing the total to 133. Defendants' Ex. 1. Several of the male students who dropped out complained that they were not learning anything.

Complaints were received by the Wrens member of the School Board, James Rogers,

1. Mr. Willingham testified that he was "ousted" from that office in 1975.

and by his predecessor concerning plaintiff's operation of the naval unit. They mainly related to lack of discipline, failure to maintain student interest, and to the alleged use of school time by the instructor for the purpose of preparing himself for the college lectures he was attending at Augusta. There were also complaints by parents concerning the operation of the unit.[2]

The principal of Wrens High School, Gardner J. Hobbs, testified that he thought Mr. Willingham's performance was such that his contract should be renewed for the school year 1976–77. He so recommended in March, 1976. Mr. Hobbs had never made negative comments about the ROTC instructor. The Superintendent of Schools of the County, O. W. Carter of Wadley, also recommended reemployment of Mr. Willingham.

At the meeting of the School Board on March 9, 1976, the matter of renewal of teaching contracts came up. When plaintiff's name was read, Mr. Rogers objected and asked that his case be considered separately. The Chairman of the Board, James C. Abbott, is a prominent Louisville attorney. He testified that the ensuing discussion lasted up to 45 minutes. Mr. Abbott asked a number of questions. He agreed with the ultimate decision of the Board. He did not vote. Mr. Willingham's criticism of the Training Center had nothing to do with his termination, according to the Chairman.[3]

After discussion, the Board unanimously voted not to renew the contract. It subsequently turned down plaintiff's request for reconsideration. The merits of the case for nonrenewal are not material in the absence of tenure. Whether adequate grounds therefor existed becomes relevant only in connection with the First Amendment claim. "If the charges are false, then the likelihood of their serving as a pretense for another, unconstitutional basis for renewal is increased." If the charges are true, would the same decision have been made had there been no expression of constitutionally protected views and expressions? See *Love v. Sessions, supra.* But before the trier of facts is called on to make that determination the plaintiff must satisfactorily show that his exercise of the right of free speech was a substantial and motivating factor in the decision not to rehire him.

Wrens is a city of 2,500 inhabitants. It is possible that newcomers are expected to accept conditions as they are and not to tread on official toes. Mr. Willingham testified that in the summer of 1974 he had a conference with Mr. Carter, the Superintendent of Schools in Jefferson County who was also an ex-officio member of the County Board of Health. Plaintiff volunteered to participate in a publicity campaign to get public support for a better physical facility for the Retarded Children's Training Center. He was told that he must be "a member of the team" and that as a teacher it was not proper for him to participate in such a program.[4]

Plaintiff testified at the trial that in November, 1975 Principal Hobbs told him that members of the School Board were asking, "Who is that Commander that was unhappy with the training center?" However, Mr. Hobbs recalled no such conversation and did not think that it took place.

**2.** The defendants presented testimony at the trial supporting the truth of the charges. The witnesses included Chief Petty Officer Burnett who had initially organized the unit and who was assistant to Commander Hobbs until the end of the school year 1974.

**3.** A factor that had a part in the Board's action was that if the contract were renewed tenure would be established and plaintiff could not thereafter be terminated except with notice and written reasons and a hearing. Ga. Code Ann. §§ 32–2103c and 32–2101c. Chairman Abbott mentioned this in his testimony. Prior to the meeting of the Board an opinion had been obtained from an attorney in another county that Mr. Willingham was not then tenured under the statute.

**4.** Mr. Carter testified that he recalled no such statement. He was aware prior to March, 1976, of Mr. Willingham's dissatisfaction with the Board of Health and its operation of the Training Center. It must be remembered that Mr. Carter recommended renewal of Willingham's contract.

Motivation of actions is difficult to establish by direct evidence. Mr. Willingham thinks that Mr. Rogers, the member of the County School Board from Wrens, harbored an animosity toward him. It possibly stemmed, he intimated, from the objections of Rogers' son to the rule in the unit restricting the length of wearing hair. It is implied that animus is shown by the fact that one of the witnesses who complained about his operation of the ROTC unit was an employee of the City of Wrens of which Mr. Rogers is Administrator. The employee in question complained to him of the lack of discipline observed by him in the classroom on one occasion.

### III

Commander Willingham contends that he was the victim of dual office-holding and membership on county boards. Thus, Mr. Rogers was a member of the School Board as well as City Administrator of Wrens. The County Superintendent of Schools, O. W. Carter, served also as an ex-officio member of the Board of Health which had the responsibility for the operation of the Training Center. The Director who was the object of plaintiff's criticism was the sister-in-law of a regional supervisor of the Division of Mental Health of the State. Mr. Willingham is convinced that because of overlapping membership on the School and the Health Boards, his criticism of the one led to dismissal by the other.

He complains that the School Board members abdicate their duty by their routine deference to recommendations of the member representing the area in which the affected school is located. As a result of this practice, he urges that Mr. Rogers' prejudiced and mistaken views as to his performance prevailed over the recommendation of the principal and Superintendent.

It is true that several of the members who were on the School Board at the time they voted not to renew the contract said they did so on the strength of Mr. Rogers' representations. More important, however,

to the point at issue is that of the seven members of the Board, five were unaware at the time of any criticism by Mr. Willingham of the Health Board or the operation of the Training Center. Mr. Rogers was the only member of the School Board familiar with that fact.[5] Superintendent of Schools Carter who as Secretary was present at the meeting testified that he was aware of Willingham's problems with the Board of Health. However, that fact had nothing to do with the School Board's decision.

The general public knew little or nothing about Mr. Willingham's criticisms of the Center. His letters were sent to officials outside the County and were unpublicized. The minutes of the meeting of the Board of Health on March 24, 1976 reflect that the complaints of the Willinghams concerning the Center related (1) to the "time out room" and his daughter's confinement there for unjustified punishment and (2) the fact that excessive time was spent by the personnel in keeping a highly detailed daily record of her actions. See Defendants' Ex. 3.

Plaintiff's comments and letters involved a personal problem of his. Mr. Willingham's interest, even obsession, with the welfare and care of his daughter is entirely understandable. This is not to say that his right to speak his mind on the subject was not protected by the First Amendment. See in this connection, *Bean v. Darr,* 354 F.Supp. 1157, 1158–59 (M.D., N.C.).

The critical point is that members of the Board of Education knew nothing whatsoever about plaintiff's criticism of the Center until after plaintiff's contract was not renewed.

### IV

There is no evidence that the action of the Board of Education was motivated by any purpose or desire of punishing Mr. Willingham for exercising his right of freedom of speech. That theory is based only on

---

5. Chairman Abbott had overheard across a civic club table some sort of reference to Willingham having troubles with the Health Board. The details he did not know or recall.

assumptions, opinions and hearsay. Plaintiff's letter of June 8, 1976 to the Assistant Director of the Division of Mental Health refers to an emotional meeting between some friends of the Director, Mrs. Kennedy, and the County Commissioners. Plaintiff's Ex. 2. No evidence was presented as to any such meeting. The plaintiff admitted in the letter that what he said was "entirely hearsay."

We are not concerned here with whether or not the Board's action in failing to rehire plaintiff was right or wrong. The Due Process Clause does not contemplate government by angels. It is not my function to fathom the depths or shallows of the mentation of members of administrative boards. The board has the right to be wrong, at least as far as judicial intrusion is concerned.

As noted, what is before this Court is whether plaintiff satisfied by a preponderance of evidence that a substantial or motivating factor in the Board's decision not to rehire him was his exercise of First Amendment rights and if so, whether defendants have shown that "the same decision would have been reached even in the absence of the protected conduct." *Mt. Healthy City Board of Education v. Doyle, supra,* 429 U.S. at 287, 97 S.Ct. at 576.

My answer as to the motivating factor is no. But even were it yes, the evidence would impel a finding that the defendants have carried the burden of showing that the challenged action of the Board would have been taken irrespective of Mr. Willingham's expressions of dissatisfaction with the way things were at the Training Center. Interference by this Court with the functions of the School Board in regard to hiring of personnel is not warranted under the facts of this case.

Judgment will be entered for the defendants.

Since the findings and conclusions in this Opinion represent a sufficient compliance with Rule 50(b), they will not be formalized.