**Flossie V. GRIMES, Appellant,**

v.

**NOTTOWAY COUNTY SCHOOL BOARD et al., Appellees.**

**No. 71–1417.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1971.

Decided June 6, 1972.

Robert M. Alexander, Arlington, Va. (Hugh E. Watkins, Alexandria, Va., on brief), for appellant.

Frederick T. Gray, Williams, Mullen & Christian, Richmond, Va. (Copeland E. Adams, Blackstone, Va., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, RUSSELL, Circuit Judge, and DUPREE, District Judge.

DUPREE, District Judge:

Alleging a violation of her constitutional rights in its refusal to renew her contract of employment for the school year 1968–69, the plaintiff, a non-tenured high school teacher, brought this action against the defendant School Board, the superintendent and principal under the Civil Rights Act of 1871, 42 U.S.C. § 1983, seeking injunctive relief, back pay, attorney's fees and court costs. At the trial the plaintiff conceded that the failure to renew her contract was not based on the infringement of any of her substantive constitutional rights but insisted that she had not been afforded a hearing comporting with the minimum requirements of procedural due process. The district court found that plaintiff had in fact been given a hearing by defendants and concluded that "administrative due process was not lacking in the premises". The action was dismissed and we affirm.

The plaintiff had taught in the Nottoway County Schools for seventeen years. In the spring of 1968 she was told by her principal that he would not recommend her for reappointment for the coming school year. In the discussions with the principal and school superintendent which ensued the reasons for the principal's decision were explained to plaintiff. By letter to the superintendent dated May 20, 1968, plaintiff asserted that she was unable to reconcile these reasons with the severity of the action taken and she requested a meeting with the School Board "in order that our views may be reviewed and considered by this body." In this letter she listed the three subjects she wished to

have discussed and considered.[1] Responding to this request by letter dated May 27, 1968, the superintendent informed plaintiff that a special meeting of the School Board had been called for May 29 "for the specific purpose of hearing your grievances".

The meeting was held as scheduled, and the plaintiff appeared with her counsel. The matter was given a full airing. The complaints made against plaintiff by the principal were general in nature and seemed to relate for the most part to disciplinary problems. There was no suggestion that plaintiff had been denied employment because of her race or for any other constitutionally impermissible reason. The superintendent reiterated his recommendation and plaintiff and her counsel stated their views. At the request of plaintiff's counsel the School Board's decision was deferred until the next regular meeting of the Board which was held on June 13, 1968.

Plaintiff and her attorney again appeared at the June meeting, but they tendered no witnesses, offered no additional evidence and did not seek to question further the principal and superintendent. They did not request a further hearing or postponement of decision. The School Board thereupon voted unanimously to follow the recommendations of the principal and superintendent and not to renew plaintiff's contract for the ensuing year. This suit followed.

There is a divergence of authority in the circuits on the question of the right of a teacher without tenure to a due process hearing upon non-renewal of a contract of employment.[2] This court has not been called upon to decide a case involving refusal to renew the contract of a non-tenured teacher unassociated with a claim of substantive constitutional right violation, but the lower courts of this Circuit, relying on decisions of this court in other public employee cases,[3] have consistently denied the right to a hearing in such cases.[4]

We need not decide here the question of plaintiff teacher's right to a hearing. Instead, we can assume *arguendo* that

---

1. They were: "1. The actual number of pupils referred to the office, instead of being released in the halls at will, has been small. It did happen, however, that those who persisted in obstructing teaching-learning procedures were referred more than once.
   "2. The reasons attempts were made, on my part, to make unscheduled pupil-teacher-principal talks brief by supplying written description was that to have done the opposite would have meant leaving the group unsupervised at a time psychologically inappropriate.
   "3. Pupils who might have inferred any dislike about how their work is evaluated have been those who were using work-avoidance and defense mechanisms."

2. Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir. 1971), aff'g. 310 F.Supp. 972 (W.D.Wis.1970), cert. granted 404 U.S. 909, 92 S.Ct. 227, 30 L.Ed.2d 181 (1971), upheld the right of a non-tenured university professor to a hearing upon the non-renewal of his contract. Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir. 1969), cert. denied 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93, and Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. denied 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970), denied the right. The *Roth* case is awaiting decision by the Supreme Court following argument on January 18, 1972. *Compare* Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971), as noted in 85 Harvard Law Review 1327 (April, 1972).

3. Notably Hodgin v. Noland, 435 F.2d 859 (4th Cir. 1970) (city librarian); Brown v. Hirst, 443 F.2d 899 (4th Cir. 1971) (Municipal employee); and Kirker v. Moore, 436 F.2d 423 (4th Cir. 1971), cert. denied 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971) (state road commission employees).

4. Johnson v. Fraley, 327 F.Supp. 471 (W.D.Va.1971) (non-tenured public school teacher); Holliman v. Martin, 330 F.Supp. 1 (W.D.Va.1971) (non-tenured college professor); Kota v. Little (E.D.N.C.1971) (non-tenured college professor. The case is presently on appeal.)

she was so entitled and confine our decision to the narrow issue stipulated by the parties and decided by the district court: Was the hearing afforded plaintiff adequate to satisfy the requirement of procedural due process? We hold that it was.

■ Plaintiff correctly asserts that if she was entitled to a hearing, minimal procedural due process required that she be given adequate notice, a specification of the charges against her, an opportunity to confront the witnesses against her and an opportunity to be heard in her own defense. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). But it is equally true that "[T]he sufficiency of the procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved", and that "[W]hen no established procedures exist the school may adopt any method that is adequate to comply with the above minimums". *Id.* at 856.

■ Admittedly the first meeting of the School Board was called on short notice and at best it was an informal forum for the airing of plaintiff's grievances. There was no statutory procedure prescribed, however, and the evidence was that it was the only procedure the Board had ever employed in such cases.[5] Moreover, the plaintiff herself had requested this meeting, and she was able to attend in person and with counsel. No objection was raised as to insufficiency of notice, and any such objection must now be held to have been waived.

The reasons for the failure of the principal and superintendent to recommend plaintiff's reappointment apparently were not reduced to writing until the day of the School Board meeting, but the evidence was uncontradicted that she had been given the reasons orally. Conclusive evidence of this is to be found in the statement in her letter requesting the meeting that she found it difficult "to equate the reasons given not to recommend with the action taken". At no time does it appear that she or her attorney requested a written specification of the charges against her.

The only two witnesses appearing against the plaintiff at the meeting were the principal and superintendent. These witnesses were not sworn and the proceedings were not reported but the evidence at the trial fully warranted the district court's findings that the plaintiff had ample opportunity to question them.[6] The same is true of the court's finding that plaintiff was permitted to develop her own case fully. She did not produce witnesses in her own behalf, but she had opportunity to do so both at the first meeting and at the second meeting

---

5. On cross-examination the Chairman of the School Board who testified as a witness for defendants professed unfamiliarity with the meaning of "adversary hearing" and "due process", prompting the district judge to observe with respect to the latter that "an awful lot of lawyers and an equal number of judges are having an extreme difficulty with it".

6. "Although the School Board was not required to give the plaintiff a hearing re whether or not they were going to give her a teaching contract for the coming school year, under the then Virginia law they voluntarily did so. They convened a special Board meeting so that the members could give their undivided attention to her complaint—they heard everything she had to say and were willing to listen to any other persons she wanted them to hear—The school superintendent stated publicly the reasons for not recommending that she be rehired. They allowed her counsel of her own choosing and they gave him every opportunity to question the superintendent and/or any of the Board members. They deferred their final vote for some two weeks at his request. In fact, there is not one word of evidence in this case indicating that the plaintiff was denied the right to literally do anything she wanted to do or to say anything she wanted to say in respect to the subject matter under consideration."

which was held two weeks later.[7] She and her counsel were afforded ample opportunity to be heard at each of the two meetings.

We conclude that if plaintiff was entitled to a hearing, the procedures employed in the two meetings of the School Board comported fully with due process principles. This accords with the results reached by other courts faced with similar fact situations.[8]

Affirmed.

7. The decision not to call witnesses was apparently a deliberate choice of the plaintiff. In response to her counsel's questioning at the trial as to what she did upon receiving notice of the first meeting of the School Board plaintiff testified:

"A. Well, I had debated what to do, if the two men weren't going to decide. I just wondered what I was going to do anyway and I didn't know what to do. But I had thought about this, and I had thought now, as you know, and the judge has mentioned so often we didn't want to bring race into this, and I didn't want to bring community people to the meeting; I didn't want to take my husband to the meeting; I didn't want to go alone and I . . . there were so many things happening. I thought we better get to the bottom of what was happening in an authentic and responsible manner and once and for all and not to recover the ground, so I called Mr. Hill and said to him concerning the problem that I was having, I would like to have him accompany me to the meeting.

"Q. Now you called a lawyer to go with you to the meeting; is that correct?

8. Toney v. Reagan, 326 F.Supp. 1093 (N.D.Cal.1971); Worthington v. Joint School District No. 16, 316 F.Supp. 808 (E.D.Wis.1970); Ramsey v. Hopkins, 320 F.Supp. 477 (N.D.Ala.1970), modified on other grounds, 447 F.2d 128 (5th Cir. 1971).