Mary W. VANCE, Appellant,

v.

CHESTER COUNTY BOARD OF SCHOOL TRUSTEES et al., Appellees.

No. 73–2312.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1974.

Decided Oct. 2, 1974.

---

James L. Felder, Columbia, S. C., for appellant.

Charles Porter, Columbia, S. C. (John R. Justice, Chester, S. C., and Glenn, Porter & Sullivan, Columbia, S. C., on brief), for appellees.

Before CRAVEN and WIDENER, Circuit Judges, and WARD, District Judge.

WIDENER, Circuit Judge:

Mary W. Vance, a black citizen of Chester County, South Carolina, brought this suit under 42 U.S.C. § 1983, seeking reinstatement as a public school teacher and damages against the Chester County Board of School Trustees. The complaint alleged that the Board's failure to reemploy her for the 1971-72 school year violated constitutional guarantees of due process and equal protection. Specifically, she contended that the notice and hearing accorded her were unconstitutionally inadequate, and that she had been dismissed because of her race. In response to the defendant's motion, the district court granted summary judgment. Mrs. Vance has appealed. We affirm.

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment only when " . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. `. . .` " But summary judgment should be entered " . . . only where the moving party is entitled to a judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial . . . if they really have issues to try." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

From the papers and depositions, the following facts emerge. Mrs. Vance was employed in the public schools of Chester County, South Carolina for approximately 26 years. Her contract contained no provision for formal tenure, and instead was required to be renewed annually upon appropriate recommendation by the Superintendent of Chester County Schools to the Chester County Board of School Trustees.

During the school year 1968-69, the final year of a segregated school system in Chester County, Mrs. Vance was employed as a teacher at Landsford-Lewisville Elementary School, an all black institution. Her principal, who was black, completed a fitness report dated February 12, 1969 which noted that Mrs. Vance required improvement in eight of nine subcategories relating to "Instructional Competence." She was also graded as requiring improvement in four of six subcategories relating to "Professional Attitudes and Growth."

In 1969-70, the first year of a unitary school system in Chester County, Mrs. Vance was reemployed at Gayle Elementary School. But, because she had only a "C" teaching certificate, she worked as a "teacher's aide" to the first grade. Her principal reported in March 1970 that she required improvement in five subcategories of instructional competence and that her performance was unsatisfactory in a sixth. In "Professional Attitudes and Growth," she was also marked as requiring improvement.

During the 1970-71 school year, Mrs. Vance obtained a "B" certificate, and she was again reemployed, this time as a second grade teacher at Dora Jones Elementary School. During the school year, her work was observed on several occasions and her superiors discussed with her ways in which she could improve her performance. Following one such period of observation on January 22, 1971, her supervisors discussed with her in considerable detail her various teaching deficiencies, including an overall lack of classroom planning and a failure to make provision in some way for

children's individual strengths and weaknesses. It was emphasized to Mrs. Vance, as she had been previously instructed, that she had to establish written lesson plans and maintain index cards on each child. It was further suggested that she visit other classrooms to observe techniques utilized by other teachers.

Following the evaluation and discussion of January 22, 1971, Mrs. Vance was notified orally, by the Elementary Supervisor, on March 4, 1971, that she was not being recommended for reemployment. This was confirmed by letter from her principal, March 8, 1971. On March 12, 1971, she was notified that the Chester County Board of School Trustees had not reelected her as a teacher. Thereafter, on April 23, 1971, Mrs. Vance wrote the Chester County Board of School Trustees asking that they reconsider the matter. In a letter of May 5, 1971, the Board informed Mrs. Vance that a hearing had been set for May 10, 1971, and invited Mrs. Vance to be present. She telephoned on May 7th to indicate she would be present.

The hearing on May 10 was attended by Board members, Mrs. Vance, and school administrators. Neither Mrs. Vance nor the Board sought assistance from counsel. Mrs. Vance presented her case fully and was permitted to leave the hearing to obtain from her classroom at Dora Jones Elementary School materials which she felt would support her position. The matters which concerned the Board involved the same shortcomings which had been discussed with Mrs. Vance in the January 22, 1971 conference, the lack of lesson plans, the need for index cards on each child, and the need to view other teachers in their classrooms.

Mrs. Vance was subsequently notified by letter of May 17, 1971 that the Board had voted unanimously to uphold its previous decision not to offer her a contract to teach in Chester County for the ensuing year.

Thereafter, however, she was offered a non-teaching position as a study hall monitor for the 1971–72 school year. This opportunity came about late in the summer of 1971, when scheduling problems at the school created the need for an additional monitor. She accepted this position and served throughout the year at a reduced salary. At the close of the 1971–72 school year, the position of study hall monitor was eliminated, and Mrs. Vance was not reemployed. Subsequently, on May 30, 1972, she brought this suit.

■ In her complaint, Mrs. Vance contends that she has been discriminated against on the basis of her race. Yet, initially, we note that the record reflects no effort by the Chester County Board to exclude blacks from teaching positions. In the spring of 1971, Mrs. Vance was one of eight teachers who were not recommended for reemployment, four of whom were white and four black. Thus, unlike United States v. Chesterfield County School District, 484 F.2d 70 (4th Cir. 1973), we are not confronted with a situation in which a disproportionately large number of black teachers have been suddenly discharged in the midst of a transition to a unitary school system.

When asked if the school board treated white teachers any differently than black teachers in employment practices, Mrs. Vance stated she did not know. She did claim that her assignment in 1971–72 as a high school study hall monitor was outside her range of experience and unfair to her, but this occurred after the non-renewal of her teaching contract. Indeed, this position had been offered primarily as a favor to her. When asked how she was treated unfairly because of her race, she stated: "I would say that my rights have been violated." But when asked how these rights had been violated, she stated she did not know.

■ Mrs. Vance further claims that the notice and hearing accorded her failed to comport with the fourteenth

amendment requirements of procedural due process.[1] Specifically, she asserts that due process requires that she be given written notice of the charges resulting in her non-renewal, that she be represented at the hearing by an attorney, and that the hearing itself be conducted before any action is taken by the Board on the renewal or non-renewal of her contract.

In Grimes v. Nottoway County School, 462 F.2d 650, 653 (4th Cir. 1972), a case involving similar issues, we held that procedural due process requires adequate notice, a specification of the charges, an opportunity to confront adverse witnesses, and an opportunity to be heard in one's own defense. But, importantly, Grimes also acknowledged that "[T]he sufficiency of the procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved", and that "[W]hen no established procedures exist the school may adopt any method that is adequate to comply with the above minimums". Grimes, supra, at 653, quoting from Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970).

■ The record shows that Mrs. Vance's work had been less than satisfactory for a long period of time, and this had been discussed with her on several occasions in the context of improving her performance. These generalized discussions culminated on January 22, 1971 in a very specific discussion of her deficiencies. Mrs. Vance admits this occurred and further admits these specific deficiencies also formed the basis of the discussion when her case was heard on May 10, 1971 before the Board. Consequently, on these facts, the district court, properly we feel, held that the oral notice of the reason for not renewing her contract was adequate.[2]

■ Similarly, we hold that in light of the fact that neither party at the hearing sought the assistance of counsel, and in view of the informality of the proceedings and the lack of any pre-established procedures, due process does not require the presence of counsel under these circumstances. "The school may adopt any method that is adequate to comply with [due process] minimums." Grimes, supra, 462 F.2d at 653.

■ Lastly, the question arises whether an evidentiary hearing should

---

1. The requirements of procedural process apply only to deprivation of interests encompassed by the fourteenth amendment's protection of liberty and property. When these protected interests are implicated, the right to notice and hearing is paramount. E. g., Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). In the instant case, Mrs. Vance has made no claim that allegations have been made regarding her "good name, reputation, honor, or integrity." Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Although she does contend that her reputation has been damaged by her non-retention, such a claim without more does not constitute a deprivation of liberty. Kota v. Little, 473 F.2d 1 (4th Cir. 1973). Nor is there any claim of any other constitutionally impermissible action affecting her liberty interest on the part of the defendants, other than the alleged denial of procedural due process.

Although she had been employed approximately 26 years, Mrs. Vance had no tenure rights, either contractual or statutory, to continued employment. Nevertheless, as the Supreme Court, in Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2700, 33 L.Ed. 2d 570 (1972) observed, "absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in reemployment." See also Johnson v. Fraley, 470 F.2d 179 (4th Cir. 1972). Thus, while whether or not Mrs. Vance had a legitimate claim of entitlement to a teaching position in Chester County may be debatable, we shall assume for the purposes of argument that she had a property interest sufficient to require the Board to grant her a hearing when it declined to renew her contract of employment.

2. As in Grimes, where oral notice was found adequate, at no time does it appear that she requested a written specification of the charges against her.

have been accorded prior to the Board's decision not to renew Mrs. Vance's contract. The resolution of this issue depends on a balancing process in which the Board's interest in expeditious removal of an unsatisfactory employee is weighed against the interest of the affected employee in continued public employment. Goldberg v. Kelly, 397 U.S. 254, 263–266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). As the Supreme Court noted in Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), " . . . consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

■ Here, the public interest is the maintenance of employee competence and efficiency. These factors are essential if government is to perform its responsibilities effectively and economically. Thus, government must have wide discretion and control over the management of its personnel and internal affairs. See Cafeteria Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743 (1961); *Arnett, infra*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15. And this necessarily includes the ability to remove those employees whose conduct hinders efficient operation.

Generally, the public employee's countervailing interest is the continuation of his employment pending an evidentiary hearing. Yet, in Mrs. Vance's case, the period of employment at stake before the Board involved the subsequent 1971–72 school year, which was yet to come. No interruption of her 1970–71 contract was either accomplished, contemplated or suggested. Thus, Mrs. Vance has suffered not even a temporary interruption of income, without notice or hearing, from the County Board's initial action on March 8, 1971 and the subsequent May 10, 1971 evidentiary hearing. Any possible deprivation is considerably less severe than that involved in Goldberg v. Kelly, for example, where termination of welfare benefits to the recipient would have occurred in the face of "brutal need." 397 U.S. at 261, 90 S.Ct. 1011. Indeed, as the Supreme Court noted in that case, " . . . the crucial factor in this context—a factor not present in the case of . . . the discharged government employee . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." *Id.* at 264, 90 S.Ct. at 1018. Nor does this case present a deprivation as severe as that involved in Huntley v. North Carolina State Board of Education, 493 F.2d 1016 (4th Cir. 1974), where an individual's teaching certificate was revoked.

Subsequent to oral argument of this case, the Supreme Court decided Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, 1974, which is dispositive of the issue here as to the timeliness of the hearing so far as a "liberty interest" is concerned. In that case, where an employee had been discharged for making false statements about an employer, the court upheld the validity of the Lloyd-Lafollette Act, now 5 U.S.C. § 7501. Under the statute and regulations issued in accordance with it, federal employees, who may be discharged only for cause, are afforded an adversary type hearing only after the initial decision to discharge the employee has been made. The court upheld the procedure stating (at p. 157, 94 S.Ct. at p. 1646), "[s]ince the purpose of the hearing in such a case is to provide the person 'an opportunity to clear his name,' a hearing afforded by administrative appeal procedure after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." Here, it must be remembered, Mrs. Vance not only received and attended a hearing, but after notice, and before her termination as a teacher became effective, for her employment did not terminate until the end of the school year which fol-

lowed both the initial decision not to review her contract and the hearing before the School Board.

The essential fairness of the hearing is aptly described in the plaintiff's deposition:

Q: "So it would be fair to say, then, Mrs. Vance, that they listened to your side of the story and they looked at the evidence that you had to present concerning the complaint that was being made against you?"

A: "Yes."

Q: "The Board considered these matters and you had full opportunity to present your side of the story?"

A: "Yes."

On balance, then, we conclude that a prior evidentiary hearing was not required, and that the action of the Board comported with due process.

Affirmed.