Bliss O. **BIGNALL**, Jr., et ux., **Appellants**,

v.

**NORTH IDAHO COLLEGE et al., Appellees.**

No. 74–3228.

United States Court of Appeals, Ninth Circuit.

June 17, 1976.

Carl Maxey (argued), of Fredrickson, Maxey, Bell & Anderson, Spokane, Wash., for appellants.

W. W. Nixon (argued), and J. T. Knudson (argued), Coeur D'Alene, Idaho, for appellees.

OPINION

HUFSTEDLER and KENNEDY, Circuit Judges, and SWEIGERT,* District Judge.

HUFSTEDLER, Circuit Judge:

Bliss O. Bignall and Annette R. Bignall ("Bignalls") brought an action under 42

* William T. Sweigert, Senior United States District Judge, Northern District of California, sitting by designation.

U.S.C. § 1983 claiming that North Idaho College ("College") had denied Mrs. Bignall procedural and substantive due process when it declined to renew Mrs. Bignall's teaching contract for the 1973–74 academic year. The district court granted judgment for the defendants and the Bignalls appeal.

Mrs. Bignall taught at the College from 1961 to 1973, as a part-time instructor until 1969, and as a full-time instructor thereafter. In November 1972, allegedly responding to a decline in student enrollment, the Board of Trustees ("Board") of the College ordered the College's President, Barry G. Schuler ("Schuler") to cut the faculty by two full-time teaching positions. Mrs. Bignall was one of the two selected for non-renewal, and Schuler notified her by letter on January 10, 1973, that the College would not rehire her for the coming year. The letter stated no reasons for her termination. The Bignalls subsequently wrote to Schuler requesting an explanation and were informed that the Board had mandated that two full-time faculty be cut. When they asked for a hearing before the Board, the Board's attorney replied that the Board considered Mrs. Bignall a probationary employee, and as such she was not entitled to a hearing. The letter did say that if the Bignalls could provide them with evidence showing Mrs. Bignall was tenured, the Board would reconsider its position. The Bignalls took this letter as a rejection of their request and, in June 1973, filed suit in the district court.

The Bignalls alleged that Mrs. Bignall had been denied due process in retaliation for the activities of her husband, a lawyer, in behalf of minority students at the College. These activities were protected under the First Amendment. They requested a preliminary injunction, which the district court denied. At the same time, the court ordered the Board to provide a hearing prior to the start of the 1973–74 academic year. In late August and early September 1973, the Board held hearings, but the Bignalls withdrew when the Board refused to allow them or their counsel access to the confidential personnel files of the other teachers who were considered for non-retention.

The Bignalls returned to the district court, where a trial was had. The court found that Mrs. Bignall was *de facto* tenured, but that she had waived her right to further administrative due process by improperly terminating the August hearing and that, in any event, the College had declined to renew her contract for valid, nondiscriminatory reasons, not as a result of her husband's activities.

On appeal, the Bignalls contend that they were denied procedural due process because (1) Mrs. Bignall did not receive proper notice and hearing prior to Schuler's decision and (2) the Board of Trustees was a biased panel. They further say that the College violated its own tenure policy by not showing a "demonstrable financial exigency" when it terminated Mrs. Bignall. They do not challenge the district judge's holding on the lack of a First Amendment violation.

Due process is a flexible, pragmatic concept. (*Goss v. Lopez* (1975) 419 U.S. 565, 578, 95 S.Ct. 729, 42 L.Ed.2d 725.) Its contours are specified by a balance among various factors:

> "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 [44 U.S.L.W. 4224, 4229 (1976)].)

(*See generally* Note, "Specifying the Procedures Required by Due Process: Towards Limits on Interest Balancing," 88 Harv.L. Rev. 1510 (1975).) Moreover, the component parts of the process are not unrelated (Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267 (1975)): the goal of the procedures is to reach a substantively cor-

rect result at a minimum of cost. More elaborate procedures at one stage may compensate for deficiencies at other stages. (Cf. *Mathews v. Eldridge, supra; Arnett v. Kennedy* (1974) 416 U.S. 134, 187, 195–96, 94 S.Ct. 1633, 40 L.Ed.2d 15.)

A *de facto* tenured faculty member has a right to notice, and "a hearing, at [her] request, where [she] could be informed of the grounds for [her] nonretention and challenge their sufficiency." (*Perry v. Sindermann* (1972) 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570.) Far from requiring that this hearing precede the decision not to rehire the employee, the cases only mandate that the hearing be granted "at a meaningful time and in a meaningful manner." (*Armstrong v. Manzo* (1965) 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62.) This usually means before the discharge becomes effective, but it can mean after the termination, if there is an adequate procedure for redress. (*See Mathews v. Eldridge, supra; Arnett v. Kennedy, supra.*)

The Bignalls assert *Perry v. Sindermann* and its progeny mean that Mrs. Bignall had a right to notice and a hearing before Schuler had decided that she was one of the two faculty not to be rehired. Recently, the Courts of Appeals for the Third and Fourth Circuits have decided this precise issue adversely to the Bignalls. (*Chung v. Park* (3d Cir. 1975) 514 F.2d 382; *Vance v. Chester County Board of School Trustees* (4th Cir. 1974) 504 F.2d 820.) The plaintiff in *Chung v. Park* attempted what the Bignalls here attempt: by arbitrarily defining the time the decision to terminate is made as the time termination occurs, he sought to manufacture a constitutional requirement for a pre-decision hearing but,

"a pre-termination hearing is not a hearing held prior to any decision to terminate, as Dr. Chung suggests, but rather a hearing held prior to a termination of benefits . . . In the present case, any hearing held prior to the end of the academic year would be a pre-termination hearing." (514 F.2d at 386 n.7.)

■ We agree with the Third and Fourth Circuits. The instructor has not been denied due process while still employed at the same job and while adequate procedures remain to challenge and forestall the nonretention.[1]

The College afforded the Bignalls a hearing but they chose prematurely to withdraw from it and return to the district court. The plaintiff in a section 1983 suit usually does not need to exhaust either state judicial or administrative remedies. (*Ellis v. Dyson* (1975) 421 U.S. 426, 432–33, 95 S.Ct. 1691, 44 L.Ed.2d 274 *(dictum); Monroe v. Pape* (1961) 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492; *Hochman v. Board of Education* (3d Cir. 1976) 534 F.2d 1094.) But we have held that where an adequate "administrative remedy . . . was not designed to be remedial, . . . [but] [i]nstead, . . . provide[s] a means of forestalling a threatened future deprivation of civil rights," the plaintiff must run the procedural gauntlet. (*Whitner v. Davis* (9th Cir. 1969) 410 F.2d 24, 28. *See also Toney v. Reagan* (9th Cir. 1972) 467 F.2d 953; *cf. Canton v. Spokane School District No. 81* (9th Cir. 1974) 498 F.2d 840; *Parker v. Letson* (N.D.Ga.1974) 380 F.Supp. 280.)[2]

When the Bignalls unilaterally halted the hearing, they aborted the decision-making process.[3] The hearing could have resolved

---

1. This court has used a balancing test to decide if a pre-termination hearing is constitutionally necessary. (*Peacock v. Board of Regents* (9th Cir. 1975) 510 F.2d 1324.)

2. The Circuits are split on the need to exhaust state administrative remedies (Moskowitz & Casagrande, "Teachers and the First Amendment: Academic Freedom and Exhaustion of Administrative Remedies Under 42 U.S.C. Section 1983," 39 Albany L.Rev. 661, 694–704 (1975).)

3. The district court's order contemplated a return to it if "either of the parties determine themselves to be aggrieved by the failure of the other party to perform in the spirit of this order . . . ." Despite this language, where, as here, the College had offered an adequate hearing, the Bignalls have no additional rights. Their withdrawal was only appropriate if they were about to be harmed, *i. e.,* if the hearing was inadequate.

the controversy, and given the district court, whose review would not normally be *de novo,* a full record to evaluate. The College violated the Bignalls' procedural rights only if it offered an inadequate hearing. If the suggested procedure would have been adequate, the Bignalls cannot state a claim under the Civil Rights Act for a denial of their procedural rights when they themselves elected to forego a complete hearing. (*Whitner v. Davis, supra; Hayes v. Cape Henlopen School District* (D.Del.1972) 341 F.Supp. 823.)

The Bignalls assert, in effect, that the procedure was inadequate both because the notice they received insufficiently specified why Mrs. Bignall was to be terminated and because the Board was biased since it had ordered the cut and it was concerned with the financial operation of the College.

■ The Bignalls have given us no facts which show the prejudice of this Board; they assume that any board in a like position would be biased and that the hearing is constitutionally inadequate as a matter of law. The cases do not support this position. While the risk of error with a biased hearing panel is obvious, courts have balanced the need for an objective decision-maker against the costs of employing outside people, administrative efficiency and the body's having some expertise in institutional structure. (*Simard v. Board of Education* (2d Cir. 1973) 473 F.2d 988, 992; *Ferguson v. Thomas* (5th Cir. 1970) 430 F.2d 852, 856 ("hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.").) Thus, courts have often allowed Boards of Education or college boards of trustees to hold hearings about firings of faculty by administrators. (*Brubaker v. Board of Education* (7th Cir. 1974) 502 F.2d 973; *Swab v. Cedar Rapids Community School District* (8th Cir. 1974) 494 F.2d 353; *Simard v. Board of Education, supra; Vance v. Chester County Board of School Trustees, supra; Ferguson v. Thom-*

*as, supra.*); *cf. Hortonville Joint School District No. 1 v. Hortonville Education Ass'n* (1976) —— U.S. ——, 96 S.Ct. 2308, 49 L.Ed.2d 1 (no due process violation when board of education engaged in collective bargaining with teachers fired teachers striking in violation of state law).) Furthermore, in *Wolff v. McDonnell* (1974) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Supreme Court refused, on the record before it, to find bias where a good time revocation had been approved by the administrators of the prison.[4] On the face of it, the committee in *Wolff v. McDonnell* is no less "biased" than the Board in this case. (*See also Arnett v. Kennedy, supra. Cf. Withrow v. Larkin* (1975) 421 U.S. 35, 55, 95 S.Ct. 1456, 43 L.Ed.2d 712.)

■ However, we agree with the Bignalls that since Mrs. Bignall was *de facto* tenured, the College gave them inadequate notice. The purpose of notice is to allow a complainant to marshall a case against the firing body. (*Cf. In re Gault* (1967) 387 U.S. 1, 33–34 & n. 54, 87 S.Ct. 1428, 18 L.Ed.2d 527; Friendly, *supra,* 123 U.Pa.L. Rev. at 1280–81.) The two letters from Schuler did no more than inform Mrs. Bignall that she had been non-retained because the Board had said two people must go and she was one of them. These letters nowhere refer to the Board's later position that the school had exigent financial difficulties. Although written notice is not in all situations essential (e. g., *Goss v. Lopez, supra* ), we can perceive no sound reason for the College's failure to disclose its financial situation in writing as the basis for the proposed termination prior to the August 1973 hearing. When, early in 1973, the Bignalls asked for the College's reasons for the termination, it would have cost very little to inform them of the need to dismiss two faculty. Further, since this need was precisely the reason for her non-retention, a statement of the College's financial dilemma would have defined the case that Mrs. Bignall had to present. There is some evi-

---

4. The existence of a record of the hearing complements and reduces the need for a completely disinterested arbiter.

dence that the Bignalls knew, from discussions with others and the faculty bulletin, before the hearing that the College would rely on financial exigency. In some cases such informal notice, if it grows out of the prescribed grievance procedure, may satisfy due process. (*See Toney v. Reagan, supra,* 467 F.2d at 959.) Mr. Bignall's March 19, 1973 request for a hearing did link low enrollment to the mandated faculty cuts. But generally, and especially for a *de facto* tenured instructor, such notice by inference will be inadequate. (*Thomas, supra,* 430 F.2d at 857.) The financial exigency claim first arose in full form at the Board's hearing. At this point the Bignalls lacked time to prepare a rebuttal. Even under the usually malleable due process standard, the notice of the basis for Mrs. Bignall's non-retention was inadequate. (*Contrast Whitner v. Davis, supra,* 410 F.2d at 27 n. 1; *Ferguson v. Thomas, supra,* 430 F.2d at 855–57; *Johnson v. Board of Regents* (W.D.Wis. 1974) 377 F.Supp. 227; *Levitt v. Board of Trustees* (D.Neb.1974) 376 F.Supp. 945.)

■ Following the Board's hearing, the district court held a *de novo* evidentiary trial. Along with the evidence presented at trial, the court considered the transcripts of the hearing. It decided not only the Bignalls' allegations of procedural irregularity, but also the merits of their position that Schuler had chosen Mrs. Bignall discriminatorily. The Bignalls received the complete panoply of procedural rights. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *Goldberg v. Kelly* (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.) This hearing fulfilled Mrs. Bignall's right to a review of Schuler's decision. (*Zimmerer v. Spencer* (5th Cir. 1973) 485 F.2d 176; *Ferguson v. Thomas, supra. But see Ske-*

*han v. Board of Trustees* (3d Cir. 1974) 501 F.2d 31, 40, *vacated on other grounds* (1975) 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474.)

We conclude that the total procedure, including intervention by the district court, did provide the Bignalls with substantial due process. This does not mean that they "waived" their procedural due process cause of action by abandoning the hearing. Since the lack of notice as to the real reason Mrs. Bignall was terminated rendered the procedure to that point inadequate, the Bignalls would not have received due process by continuing the hearing. However, this is not a case where a court has to review, using a deferential standard, a fully-run administrative procedure. The process the Bignalls received included the trial, by which time there was ample notice of the alleged financial exigency. Seiter, the Chairman of the Board, and Schuler had referred to it at the hearing; the pre-trial order had specifically noted that compliance with the College's tenure policy was an issue of fact for trial. The district judge found, correctly as we shall discuss *infra,* that the College properly terminated Mrs. Bignall's employment. Therefore, even perfect notice before the August hearing would not have helped her ultimately to prevail. Moreover, in this case, unlike *Zimmerer v. Spencer, supra,* where the dismissed employee was entitled to a terminal period of employment, Mrs. Bignall's implied contract had no terminal period, and the delay did not hurt Mrs. Bignall financially.

The Bignalls maintain that the College denied Mrs. Bignall substantive due process because it violated its own tenure policy [5] in

---

5. We need not decide the issue whether *de facto* tenure at an institution with an articulated tenure policy can be equated to *de jure* tenure, because Mrs. Bignall's tenure arose prior to the College's adoption of its policy. Each of the facts upon which the district judge based his finding of *de facto* tenure occurred prior to the Spring 1972 promulgation of the tenure policy. The tenure policy, as formalized in the Proposed Tenure Policy of March 12, 1972, states that tenure shall not apply to:

"the termination of a faculty appointment due to the scheduled cancellation or abolition of an existing program, curriculum or course for reasons of demonstrable financial exigency, low enrollment or obsolescence."

The finding that Mrs. Bignall had *de facto* tenure does not automatically lead to the conclusion that she had rights identical to those granted tenure under the College's tenure program. The granting of tenure is a complex, ramified process. A holding that one has an

releasing her and because it did not develop and apply uniform criteria for deciding which faculty were not to be retained. They further state that the issue of financial exigency, or low enrollment, was not litigated below because it was raised for the first time at trial.

Under *Perry v. Sindermann, supra, de facto* tenure grows out of " 'the promisor's words and conduct in the light of the surrounding circumstances.' " (408 U.S. at 602, 92 S.Ct. at 2700, *quoting* 3 A. Corbin on Contracts § 562 (1960).) Therefore, the contours of Mrs. Bignall's rights are primarily marked by the representations made by the College on the subject of her employment. The Bignalls relied on a general statement by the College's President to Mrs. Bignall when she was hired in 1961 that she would have tenure after three years. This statement reveals nothing about the nature of the tenure. They also cite the College's 1963, 1965, and 1968 Handbooks, all of which declared that faculty who had taught continuously for three years would have their contracts automatically renewed unless the College fired them for "cause"—presumably moral turpitude or incompetence. Since Mrs. Bignall was not fired for cause, we must look elsewhere for her expectations. In 1966 she signed, as a member of the Ad Hoc Committee on Academic Freedom and Tenure, a report saying "that no further statement is necessary beyond the AAUP [American Association of University Professors] 1940 Statement on Academic Freedom and Tenure." The AAUP's statement says that, in addition to cause, tenured faculty may be non-renewed "under extraordinary circumstances because of financial exigencies. . . . Termination of a continuous appointment because of financial exigency should be demonstrably bona fide." The parties have adduced no other expressions of what they understood by tenure. Therefore, although the district judge did not state explicitly what standard he applied, we think the

most stringent test the Bignalls could be entitled to is the "financial exigency" test of the AAUP statement.

Assuming for present purposes only that the Bignalls stated a *prima facie* case that the College fired her in violation of her *de facto* tenure rights, the College bore the burden of proving that there was a financial exigency and that Schuler adopted and used a uniform set of procedures for all the faculty. (*Chung v. Park, supra; American Ass'n of University Professors v. Bloomfield College* (1974) 129 N.J.Super. 249, 322 A.2d 846; Matheson, "Judicial Enforcement of Academic Tenure: An Examination," 50 Wash.L.Rev. 597 (1975).) Although other colleges have had to show a somewhat greater need (*Johnson v. Board of Regents* (W.D.Wis.1974) 377 F.Supp. 227; *Levitt v. Board of Trustees* (D.Neb.1974) 376 F.Supp. 945), on the facts in this case we do not think the district court was clearly erroneous in holding that the College met its burden of proof on both grounds. The exigency issue arose first at the August 1973 hearing in the testimony of Seiter and Schuler. The latter stated that not only had projected increases in enrollment not materialized, but enrollment had fallen so that the College, which had hired new faculty in 1973, was overstaffed. Schuler and others repeated these contentions at trial. Although the Bignalls had seven months to prepare and the pre-trial order expressly noted this issue, they made virtually no effort to rebut the need to reduce the faculty. New academic faculty had been hired, but all were taken on prior to Mrs. Bignall's non-retention. In the absence of any evidence that a cut was not required, the College demonstrated its financial plight.

We also have no difficulty agreeing with the district judge that the College used proper procedures to select Mrs. Bignall.[6] The Bignalls point to no specific indicia of discrimination with the possible ex-

---

expectancy of continuous employment, on the other hand, is a rather gross conclusion that may merely signify that the holder of the expectancy cannot summarily be dismissed.

6. The Bignalls have not shown any positions that Mrs. Bignall could fill that others were given. The only instructor hired after she was fired was a vocational instructor.

**250**

ception that the College retained less senior faculty. On the other hand, Schuler testified that he formulated guidelines to be applied to the entire 50-person faculty. He consulted with all the department heads and considered their evaluations as well as the needs of the school. He and various administrators, including the two heads of the two departments in which Mrs. Bignall taught, all testified that she was the least well qualified academically; that because she directed her instruction to the most gifted among her students, she alienated the less bright so that students regularly transferred out of her classes or tried to avoid her courses. While there was some, perhaps unavoidable, flexibility in the selection process, the district court was not clearly erroneous in concluding that the College did not act discriminatorily.

The conclusion follows that the Bignalls were provided with adequate due process protection and that the College non-retained Mrs. Bignall for valid, constitutionally permissible reasons.

Affirmed.