SHARON O. YOW v. ALEXANDER COUNTY DEPARTMENT OF SOCIAL
SERVICES AND NAN CAMPBELL AND ALEXANDER COUNTY

No. 8322SC1045

(Filed 4 September 1984)

**Public Officers § 12— State employee—appointment as "trainee"—no entitlement
to due process in dismissal**

    An employee subject to the State Personnel Act who held a "trainee" appointment as defined by the N. C. Administrative Code did not have tenure, either under State law or an employee handbook; therefore, the employee did not have a property interest in her continued employment which entitled her to the protection of the Due Process Clause of the Fourteenth Amendment.

APPEAL by plaintiff from *Lupton, Judge*. Judgment entered 12 May 1983 in Superior Court, ALEXANDER County. Heard in the Court of Appeals 20 August 1984.

Plaintiff appeals from an adverse judgment in her suit wherein she had been wrongfully discharged from employment.

The pertinent facts are as follows:

In November 1980, plaintiff, Sharon Yow, after having been selected for employment under the State's competitive system of selection, began working as a Social Worker Trainee at the Alexander County Department of Social Services.

On 5 October 1981, defendant, Nan Campbell, Director of the Alexander County Department of Social Services, had a conference with plaintiff. There, Ms. Campbell verbally notified plaintiff that her employment was going to be terminated. In addition, Ms. Campbell provided plaintiff with a letter, signed by Ms. Campbell, which stated that plaintiff's services as a social worker trainee had not met the expectations of an employee in order to be granted permanent status under the State Personnel System. This letter outlined three reasons for this conclusion: inadequacy in understanding overall job responsibilities, inadequacy in inter-

viewing skills and inadequacy in serving the client in a manner which contributes to his or her self-respect.

Plaintiff did not believe that her termination had been made in accordance with the guidelines set out in the "Alexander County Department of Social Services Employee Handbook." She therefore requested a hearing before the Board of Directors of the Alexander County Department of Social Services. Her request was granted and plaintiff made an appearance before the Board. Prior to the hearing, plaintiff had requested but had not been given further information as to the reasons for her dismissal. At the hearing, plaintiff was allowed to present witnesses and to make a statement on her own behalf. She was not allowed to ask any questions of Ms. Campbell nor was she given any further indication as to the reasons for her dismissal.

A week after the hearing, plaintiff's attorney was notified by a letter from defendants' attorney that the Board would not take any action with regard to the termination of plaintiff's employment. This letter also detailed ten problems which were considered as reasons for plaintiff's termination.

On 20 January 1982 plaintiff filed suit seeking judgment against the defendants on the grounds that she was discharged in violation of her contract and without being accorded due process of law. At trial, upon completion of the plaintiff's evidence, the defendants moved for a directed verdict under Rule 50(a) of the North Carolina Rules of Civil Procedure.

*Homesley, Jones, Gaines and Fields, by Edmund L. Gaines, for plaintiff appellant.*

*Patrick, Harper and Dixon, by Charles D. Dixon and Mary Gwyn Harper; and Richard L. Gwaltney for defendants appellees Alexander County Department of Social Services and Nan Campbell.*

*Patrick, Harper and Dixon, by Charles D. Dixon and Mary Gwyn Harper; and Jerry A. Campbell, for additional defendant appellee Alexander County.*

VAUGHN, Chief Judge.

The primary issue on this appeal is whether an employee subject to the State Personnel Act who holds a "trainee" appoint-

ment as defined by the North Carolina Administrative Code has a property interest in her continued employment and is thus to be accorded the protection of the Due Process Clause of the Fourteenth Amendment. We hold that she does not.

Plaintiff contends that her complaint states a claim for relief under 42 U.S.C. § 1983. She argues that her loss of employment constituted deprivation of a constitutionally protected interest. Whether an employee has a property interest under the Fourteenth Amendment is a question decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed. 2d 684 (1976). Further, the United States Supreme Court has held that, in the context of state employment cases, without some legitimate claim to job tenure the employee can be summarily dismissed without hearing or cause so long as the dismissal is not for a constitutionally impermissible reason. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972). *See also Bean v. Taylor*, 408 F. Supp. 614 (M.D.N.C.), *aff'd*, 534 F. 2d 328 (4th Cir. 1976). No such reason is alleged in the instant case. Thus, in order to have made out a procedural due process claim, plaintiff must have shown (1) that she had actual formal tenure under the state personnel laws or rules promulgated pursuant to Chapter 126, or (2) that the Alexander County Department of Social Services Employee Handbook confers a right to tenure binding on the State. *See Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (1971); *Dyer v. Bradshaw*, 54 N.C. App. 136, 282 S.E. 2d 548 (1981).

Chapter 126 of the General Statutes establishes and provides for the administration of the State Personnel System. The purpose of the State Personnel Act is to "establish for the government of the State a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry." G.S. 126-1. The Act establishes a State Personnel Commission which has the responsibility of establishing policies and rules governing, among others, (1) a position classification plan, (2) a compensation plan, (3) reasonable qualifications for each position, (4) the appointment, promotion, transfer, demotion, suspension and separation of employees, and (5) the evaluation of employee performance. G.S. 126-4.

G.S. 126-5 and G.S. 108A-14(2) provides that the provisions of Chapter 126 shall apply to employees of local social departments and that these employees shall be appointed to their positions by the director of social services for the county in which they are going to work in accordance with the merit system rules of the State Personnel Commission. Those rules which, at the time this action arose, pertained to local government employees subject to the State Personnel Act were set forth in Title 1, Chapter 8, Subchapter 8I of the North Carolina Administrative Code (recodified as 25 N.C. Admin. Code II, effective 1 March 1984). This Court is empowered to take judicial notice of administrative rules effective under the Administrative Procedure Act, Chapter 150A, including those of the State Personnel System. G.S. 150A-64; G.S. 126-43. Since both Mrs. Yow's appointment (trainee) and position (Social Worker Trainee) were made pursuant to Chapter 126 of the General Statutes and the North Carolina Administrative Code, the following are the pertinent rules governing appointment and termination of a social worker trainee.

The North Carolina Administrative Code sets forth the types of appointments for local government employees:

(a) Probationary Appointment

(b) Trainee Appointment

. . . .

(i) Permanent Appointment

1 N.C. Admin. Code 8I .0700(a)-(i).

The Code defines probationary, trainee and permanent appointments as follows:

(a) Probationary Appointment. A probationary appointment is the initial appointment of an eligible made to a permanent position. . . .

(b) Trainee Appointment. A trainee appointment may be made to a permanent position in any class for which the specification includes special provisions for a trainee progression leading to regular appointment. An individual may not be appointed as a trainee if he/she possesses the acceptable training and experience for the class.

(1) . . . .

The specification for each class in which trainee appointment is to be authorized will define the minimum qualifications for . . . a regular probationary appointment. . . . An employee may not remain on a trainee appointment beyond the time when he/she meets the education and experience requirements for the class. After the employee has successfully completed all education and experience requirements, he/she shall be given probationary or permanent status in the position without further competitive examination or shall be separated. If the period of trainee appointment equals or exceeds the maximum probationary period, he/she must be given permanent status immediately or be separated.

.   .   .   .

(i) Permanent Appointment

(1) A permanent appointment is an appointment to a permanently established position when the incumbent is expected to be retained in the position on a permanent basis. Permanent appointments follow the satisfactory completion of a probationary and/or trainee appointment. . . .

*Id.*

For positions subject to competitive service, an employee does not achieve permanent status until the following requirements have been satisfied: "(1) The employee has been certified and approved for a probationary, trial or trainee appointment; (2) The employee has satisfactorily completed the probationary period; and (3) The employee with a trainee appointment has completed all training and experience required for elimination of trainee status." 1 N.C. Admin. Code 8I .0803(1)-(3).

Plaintiff served as a trainee until her termination in October 1981. The distinctions between permanent appointments on the one hand and probationary and trainee appointments on the other are important because the rights afforded the two groups upon separation differ.

Employees who have acquired permanent status cannot be terminated except for cause, 1 N.C. Admin. Code 8I .0904(b), and

have the right to appeal such termination. 1 N.C. Admin. Code 8I .1305(a). During the probationary period, however, an employee may be terminated upon 15 days written notice when it is determined that she is unsuitable for the position, is not going to be able to achieve a satisfactory level of performance, or for other cause. 1 N.C. Admin. Code 8I .0802(a). These other causes include causes relating to performance of duties and personal conduct detrimental to the agency. 1 N.C. Admin. Code 8I .0802(c). No right of hearing or appeal is granted. *Id.*

The rules governing the dismissal of an employee holding a trainee appointment are, admittedly, not clearly articulated in the Code. Logic, however, would dictate that a trainee employee, one whose qualifications are not sufficient to raise her to probationary status, could only have the same or fewer, not more, rights than a probationary employee. The Code describes the probationary period as "an essential extension of the selection process [which] provides the time for effective adjustment of the new employee or elimination of those whose performance will not meet acceptable standards." 1 N.C. Admin. Code 8I .0801. During this period an employee may be dismissed for cause or otherwise. *Id.*, N.C. Admin. Code 8I .0802(a), (c).

The probationary period is a trial period for those who already possess sufficient qualifications for their position. It permits the State an opportunity to observe an employee's work before it confers something as valuable as tenure upon the employee. A similar but possibly longer trial period for those who do not possess sufficient qualifications for their position seems entirely reasonable and in accord with the intent of the drafters of the Code. *See* 1 N.C. Admin. Code 8I .0701(b)(1) (recognizing that the trainee period may extend beyond the maximum time normally allowed for the probationary period). Indeed, in the subchapter dealing with appointments of State, rather than local, government employees, the description of the trainee appointment includes the recitation that it too, like the probationary appointment, is "also an extension of the selection process . . . [permitting] the elimination of those whose performance will not meet acceptable standards." 1 N.C. Admin. Code 8C .0403(b).

For reasons stated above, we hold that State law does not confer tenure and thereby a protectable property interest upon an employee with a trainee appointment.

The language found in the Employee Handbook is quite similar to that found in the Administrative Code. Under the heading "PROBATIONARY PERIOD" the handbook provides:

> When the employee's performance meets the required standard of work after he has served at least three months in the position, he shall be given permanent status unless he has a trainee appointment. If he does not achieve this level of performance within nine months after initial appointment, he shall be separated from service unless he is in trainee status; an employee with a trainee appointment is not expected to reach a satisfactory performance standard for the regular class until he has completed his training period. . . .

> The employee's service in the class may be terminated during his probationary period when it is determined that he is unsuitable for the position, is not going to be able to achieve a satisfactory level of performance, or for other cause. At any time during a probationary period an employee may be separated from service for causes relating to performance of duties or for personal conduct detrimental to the agency without right of appeal or hearing.

> If an employee is not given permanent status at the end of a nine months probationary period or at the end of the trainee period, his service must be terminated.

Alexander County Department of Social Services Employee Handbook, 34-35.

In essence, this statement provides that a trainee will not be eligible for permanent status until she completes a training period which may extend beyond the regular nine month probationary period. The trainee is subject to summary termination at the end of the training period if not given permanent status; this section provides no right of hearing or appeal upon separation.

Plaintiff asserts that she had a right to the warnings set forth on pages 48-51 of the handbook. This section of the handbook is entitled "DISCIPLINARY ACTION, SUSPENSION AND DISMISSAL" and provides for a multi-step process involving oral and written warnings prior to dismissal of an employee.

Plaintiff was not entitled to these warnings for two reasons. First, they are intended to apply only to disciplinary dismissals

for (1) causes relating to performance of duties, or (2) causes relating to personal conduct detrimental to public service, not to dismissals based on unsuitability for a position or inability to achieve a satisfactory level of performance. This is demonstrated by the use of "PERFORMANCE OF DUTIES" and "PERSONAL CONDUCT" as the primary subheadings with the appropriate disciplinary sequence outlined under each of these subheadings.

Second, the warning sequence is discretionary. "An employee . . . may be warned, reprimanded, suspended or dismissed. . . . The degree and kind of action to be taken will be based upon the [supervisor's] sound and considered judgment. . . ." Employee Handbook at 48. *See Sumler v. City of Winston-Salem*, 448 F. Supp. 519, 529 (M.D.N.C. 1978) (holding that the word "may" implies discretionary action).

Finally, plaintiff raises two additional issues on this appeal: (1) whether certain representations made by Ms. Campbell gave rise to an implied contract of tenure binding on the State, and (2) whether defendants violated plaintiff's liberty interest by placing her letter of termination in her employment file. We have carefully considered plaintiff's arguments on both issues and find them to be without merit.

Affirmed.

Judges HEDRICK and WELLS concur.